(No. 39175.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* MARTIN HENDERSON, Appellant.

*Opinion filed September 28, 1965.*

GIANNIS, GIANNIS & GEORGES, of Chicago, (PETER GEORGES, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM A. BOMP, Assistant Attorneys General, and ELMER C. KISSANE and JAMES B. KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant, Martin Henderson, who was tried by a jury in the circuit court of Cook County, was found guilty of unlawful possession of narcotic drugs and sentenced to the penitentiary for a term of six to eight years. He seeks review contending that the trial court erred in refusing to suppress certain evidence allegedly obtained by the police in violation of his constitutional rights against unlawful search and seizure.

Evidence adduced at the hearing on defendant's motion to suppress discloses that at approximately 6:00 o'clock on the morning of February 6, 1963, a vice squad, composed of four police officers, was on duty in the vicinity of the 3500 block of West Douglas Avenue in the city of Chicago. The officers were dressed in civilian clothes; their police car was unmarked; and they had come to the area pursuant to a tip by an informer that a man called "Chink" was selling narcotics in that vicinity. None of the officers knew of or were acquainted with defendant, nor did they have a description of the person known as "Chink."

The temperature was near zero and two of the officers testified that as their vehicle was moving along slowly, their attention was attracted by a man on the sidewalk who was clad only in an open jacket, trousers and bedroom slippers and who waved his hand at them. When the police car stopped and two of the officers alighted, the man, subsequently identified as defendant, dropped a tinfoil packet to the ground and started to run, then entered a building at 3451 W. Douglas. One officer retrieved the packet, while the other set out in pursuit of defendant, and when a field test of a white powder in the packet showed it to be a derivative of opium, (the testimony being that such a test could be accomplished in a matter of seconds,) a third officer joined in the chase of defendant. He was apprehended as he tried to leave the building he had entered by a rear door and, after a scuffle, was placed in handcuffs and returned to the police vehicle.

When questioned, defendant gave his name and stated that he lived in a second floor apartment at 3501 W. Douglas with a woman named Ruby Norvell. He denied that he had any narcotics in his apartment and, according to the officers, told them they could search the place and see for themselves. Defendant then accompanied the officers to 3501 but refused to go up to his apartment. The two officers who did so said they found the door ajar and, upon knocking, were told by a voice to come in. Upon entering the officers encountered Ruby Norvell talking on the telephone in a bedroom, and saw a cellophane bag containing a large amount of white powder sitting on top of a dresser. When field tested, the powder gave a positive reaction and it was also confiscated. Six marijuana cigarettes were also seized, but there was some conflict as to where they were found. One officer said they were on the top of the dresser, while another testified he thought they had been found in clothing of defendant hanging in a closet. Ruby Norvell, according to the further testimony of the officers, denied ownership of

the articles seized and said they belonged to defendant. It was the narcotics found in the apartment, as well as the packet retrieved from the sidewalk, which defendant sought to suppress as evidence.

Defendant's version of his arrest was materially different. He said that he was simply walking along the street, properly dressed, when the officers jumped out of a car and grabbed him. And while he conceded that he broke away and ran into the building at 3451 W. Douglas, where he was employed as a maintenance man, and that he had ridden with the officers to 3501, defendant testified there was no conversation whatsoever about narcotics until later in a police station when the officers informed him that contraband had been found in the apartment. Defendant said that he denied having narcotics, denied that he had been dealing in narcotics, and denied that he waved to those in the police car or had thrown a packet of narcotics to the ground. Ruby Norvell testified that she didn't know whether the apartment door was open or not, and that she had not given the officers permission either to enter or to conduct a search.

Insofar as the packet of narcotics recovered from the sidewalk is concerned, defendant's arguments here are a concession that if the officers did in fact see him throw the packet to the ground, then his arrest was lawful and the narcotics were properly seized and admitted into evidence. (See: *People* v. *Brasfield,* 28 Ill.2d 518, *certiorari* denied 375 U.S. 980, 11 L. ed. 2d 425; *Hester* v. *United States,* 265 U.S. 57, 68 L. ed. 898; *Abel* v. *United States,* 362 U.S. 217, 4 L. ed. 2d 668.) It is his contention, however, that the testimony of the officers was so improbable and contrary to human experience as to be unworthy of belief, and that we should therefore accept his testimony that the arrest was accomplished completely without probable cause and hold that the evidence obtained as the result of the illegal arrest was inadmissible.

The issue presented thus becomes a choice between the opposing witnesses who testified at the hearing on the motion to suppress, and, with regard thereto, we have repeatedly held that it is the function of the trier of fact to determine the credibility of witnesses and the weight to be given their testimony, and that where the evidence is merely conflicting we will not substitute our judgment for that of the trial court. (*People* v. *Clark,* 30 Ill.2d 216; *People* v. *Dillon,* 24 Ill.2d 122.) We see no reason to say the trial court should have disbelieved the arresting officers. Far from being contrary to human experience, cases which have come to this court show it to be a common behavior pattern for individuals having narcotics on their person to attempt to dispose of them when suddenly confronted by authorities. (*E.g., People* v. *Brasfield,* 28 Ill.2d 518; *People* v. *Pigrenet,* 26 Ill.2d 224; *People* v. *Hyman,* 24 Ill.2d 205.) In like manner we see no gross improbability in the testimony that defendant waved to the unmarked car. From his dress, from the tinfoil packet in his hand, and from the fact his apartment door was left ajar, it is reasonable to infer that defendant was on the street to make a delivery of narcotics, and mistakenly took the unmarked police car for that of his customer. We conclude the trial court did not err in refusing to suppress the tinfoil packet and its contents.

Recognizing that the search of his apartment was not in violation of his constitutional rights if consent was given, (see: *People* v. *DiGerlando,* 30 Ill.2d 544; *Zap* v. *United States,* 328 U.S. 624, 90 L. ed. 1477,) defendant contends that his statements to the police did not amount to consent, thus making the evidence recovered in the apartment inadmissible. We do not agree. When asked if there were narcotics in the apartment he replied in the negative, and when asked if a search could be made he responded: "Go ahead, but I'm not going up there with you." Attributing to his words their plain and ordinary meaning, the officers, as

reasonable men, could conclude that defendant's consent was given. The evidence thus obtained was properly found to be admissible.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*