Barry Joseph POWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00194–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 7, 1999.

Decided Nov. 4, 1999.

Ebb B. Mobley, Longview, for appellant.

William M. Jennings, Gregg County Dist. Atty., C. Patrice Savage, Asst. Dist. Atty., Longview, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Barry Joseph Powell appeals his conviction for possession of cocaine with intent to deliver. A jury found him guilty and assessed punishment at sixty years' imprisonment. Powell contends that the trial court (1) erred in overruling his motion to suppress cocaine discovered during a warrantless search; (2) erred in denying his counsel the opportunity to review an officer's offense report; and (3) erred in admitting at the guilt/innocence phase of the trial evidence of a subsequent drug possession offense. We affirm the judgment.

### FACTS

On August 28, 1998, Powell and three companions, one male and two females, were traveling eastbound on Interstate Highway 20 when Gregg County Sheriff's Deputy James Benson stopped Powell for failure to drive in a single marked lane. Officer Benson asked Powell to step outside his vehicle and join him at the rear of the vehicle. Once there, Benson asked Powell about the traffic violation. He also questioned Powell about his identity, place of employment, destination and purpose of the trip, traveling companions, and whether he had ever been arrested. Benson approached the passenger's side of the vehicle and asked similar questions of Powell's companions. The occupants gave details about the trip that Benson believed to be conflicting. Benson directed Powell to remain standing behind his car. Benson then returned to his own car, where he investigated the ownership of the car that Powell was driving. He learned that the car was not registered to Powell or any of the passengers. He also learned that, contrary to Powell's statement to him, Powell had been arrested before. Benson then returned to Powell and gave him a warning citation for failing to maintain a single lane. He briefly questioned Powell about the inconsistency, then asked Powell for his consent to search the vehicle. Powell said that because his companion, Terry Mooneyham, not he, had borrowed the car, he was unable to give consent to search it. He suggested that Benson get Mooneyham's consent. Benson asked Mooneyham for his permission to search the car. Mooneyham hesitated, but then gave his consent, whereupon Benson returned to Powell, patted him down, handcuffed him, and directed him to sit on the ground. During the pat-down, Benson detected a lump in Powell's pants around the groin area that he believed to be narcotics. Another officer, Jennifer Arnold, arrived. While Arnold patted down the female passengers, Benson patted down Mooneyham, then returned to Powell to check for the narcotics he suspected were on his person, but he no longer felt the lump. Benson, Arnold, and another officer later searched for the narcotics and found some on the pavement underneath the car near where Powell had been sitting. Officer Benson inspected the vehicle and recovered various narcotics.

Powell does not dispute that Benson acted within his authority when he stopped him for a traffic violation, but in his first point he argues that when Benson gave him the warning citation, the purpose of the stop ended and Benson's later investigation and detainment constituted an impermissible "fishing expedition." Powell argues that the post-citation detention was not supported by reasonable suspicion and thus was unreasonable in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Texas Constitution. Additionally, he contends that Mooneyham's consent to search the car was invalid because it was obtained only after the fishing expedition had begun. Our first inquiry is whether the issuance of the warning citation ended the legitimate traffic stop so that the subsequent detention was a "continued detention." If the issuance of the warning citation ended the permissible traffic stop, our second inquiry is whether Benson had reasonable suspicion to justify detaining Powell after he issued the citation.

STANDARD OF REVIEW

■ In reviewing the legality of searches following legitimate traffic stops, we review *de novo* the trial court's determinations of reasonable suspicion and probable cause. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The amount of deference we afford to the trial court's ruling on probable cause often is determined by which judicial actor is in a better position to decide the issue. If the issue involves the credibility of witnesses, thereby making the evaluation of the witnesses' demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. But if the issue is whether an officer had probable cause or reasonable suspicion under the totality of the circumstances to seize or detain a suspect, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See Loserth v. State*, 963 S.W.2d 770, 773 n. 2 (Tex.Crim.App.1998); *Guzman v. State*, 955 S.W.2d at 87 (citing *Ornelas v. United States*, 116 S.Ct. at 1662).

■ Although we review the issue of reasonable suspicion *de novo*, the ruling on a motion to suppress lies within the sound discretion of the trial court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). At the suppression hearing, the trial court observes the testimony and demeanor of the witnesses and is therefore in a better position than the appellate court to judge the credibility of the witnesses. *See id.* (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990)). Therefore, we do not engage in our own factual review. Instead, we view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling and sustain the ruling if it is sufficiently supported by the evidence and is

correct on any theory of law applicable to the case. *Id.*

At Powell's suppression hearing, only Officer Benson testified; Powell did not. The trial court heard testimony from Benson, viewed a videotape of the traffic stop, and evaluated the facts. Affording total deference to the trial court's conclusions as to Benson's credibility and to the facts leading up to Powell's continued detainment, we must review the evidence to determine whether the factors Benson listed as providing him with reasonable suspicion of drug trafficking were enough to justify his continued detention of Powell beyond the detention necessary for the traffic violation.

DISCUSSION

■ A routine traffic stop closely resembles an investigative detention. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). An investigative detention is a seizure. *Francis v. State*, 922 S.W.2d 176, 178 (Tex.Crim.App. 1996). Therefore, a traffic stop must be reasonable under the United States and Texas Constitutions. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. To determine the reasonableness of an investigative detention under the Fourth Amendment,[1] we apply the guidelines set out by the United States Supreme Court in *Terry v. Ohio*: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference initially. *See Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App. 1997) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Under the first guideline, an officer's reasonable suspicion justifies an investigative detention. *See Davis v. State*, 947 S.W.2d at 242–43 (citing *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. 1868). Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occur-

---

1. The federal *Terry* standard also applies to determinations of reasonableness under Arti-

cle I, § 9 of the Texas Constitution. *See Davis v. State*, 829 S.W.2d 218 (Tex.Crim.App.1992).

ring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime. *See Davis v. State,* 947 S.W.2d at 244 (citing *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App. 1989)). To determine whether an officer was reasonable in his initial action, we ask whether, in light of the officer's experience and knowledge, there existed specific articulable facts which, taken together with rational inferences from those facts, reasonably warranted that intrusion. *See Davis v. State,* 947 S.W.2d at 242. We give due weight, not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences he is entitled to draw from the facts in light of his experience. *See id.* at 243 n. 3. In addition, we determine reasonableness based on the totality of the circumstances. *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997). We use an objective standard: would the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate. *See Davis v. State,* 947 S.W.2d at 243. An investigative detention that is not based on reasonable suspicion is unreasonable and thus violates the Fourth Amendment. *Id.*

■■■■ A search that is reasonable at its inception may violate the Fourth Amendment by virtue of its excessive intensity and scope. *See Davis v. State,* 947 S.W.2d at 243. Under the second guideline, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). It follows that once the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity. *See Ohio v. Robinette,*

519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Also, the scope of the seizure must be restricted to that necessary to fulfill the seizure's purpose. *Florida v. Royer,* 460 U.S. at 500, 103 S.Ct. 1319. Where officers are awaiting a computer check, questioning about matters unrelated to the initial traffic stop does not violate the Fourth Amendment because such questioning does not extend the duration of an initial valid seizure. *United States v. Sharpe,* 470 U.S. 675, 687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Shabazz,* 993 F.2d 431, 437 (5th Cir.1993). In some circumstances, however, extensive questioning about unrelated matters may exceed the scope of the initial stop. *United States v. Kelley,* 981 F.2d 1464, 1470 (5th Cir.1993).

■■■■ An officer may lawfully stop a motorist who commits a traffic violation. *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App.1993); *Armitage v. State,* 637 S.W.2d 936, 939 (Tex.Crim.App.1982). However, in determining *whether* a traffic violation has been committed, these *Terry* principles apply just as they do to other crimes. *Drago v. State,* 553 S.W.2d 375, 377–78 (Tex.Crim.App.1977). If an officer has a *reasonable basis* for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop. *Id.* The officer also may detain a person who commits a traffic violation. *Garcia v. State,* 827 S.W.2d 937, 944 (Tex. Crim.App.1992). Powell does not dispute whether Benson had reasonable suspicion to stop him. Because Benson observed Powell failing to maintain a single lane of travel in violation of Section 545.060 of the Transportation Code,[2] he had the authority to stop and detain him for that violation.

■■■■ The concurring opinion takes the position that Powell did not actually violate Section 545.060 of the Texas Transportation Code. To justify the stop, however, it is not necessary to show that Powell

---

**2.** Section 545.060(a) requires an operator on a roadway divided into two or more clearly marked lanes to drive "as nearly as practical entirely within a single lane" and to "not move from the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999).

actually violated a traffic regulation. It is sufficient to show that the officer reasonably believed that a violation was in progress. *See Drago v. State,* 553 S.W.2d at 377–78; *Edgar v. Plummer,* 845 S.W.2d 452 (Tex.App.-Texarkana 1993, no writ); *Valencia v. State,* 820 S.W.2d 397 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).

The trial court denied Powell's motion to suppress on the basis of *Crittenden v. State,* 899 S.W.2d 668 (Tex.Crim.App. 1995), in which the Texas Court of Criminal Appeals held that an objectively valid traffic stop is not unlawful under Article I, § 9, even though the detaining officer had an ulterior motive for making the stop. *See Crittenden,* 899 S.W.2d at 674. We agree with Powell that *Crittenden* does not address the dispositive issue in this case. Although Benson, whatever his subjective reasons, was justified in stopping Powell, Powell's motion to suppress should have been granted if the detention exceeded its permissible duration and scope.

 In determining whether Benson's actions lasted no longer than was necessary to effectuate the purpose of the detention, we must first determine the purpose of the stop. *Davis v. State,* 947 S.W.2d 240 (Tex.Crim.App.1997). Benson stopped Powell for a traffic violation. The purpose of the stop was to investigate the reason for the traffic violation. During the investigation, Benson had the right to request a driver's license, insurance papers, information on the ownership of the vehicle, the driver's destination, and the purpose of the trip. *Mohmed v. State,* 977 S.W.2d 624, 628 (Tex.App.-Fort Worth 1998, pet. ref'd); *Ortiz v. State,* 930 S.W.2d 849, 856 (Tex.App.-Tyler 1996, no pet.). In addition, it was reasonable for Benson to check for outstanding warrants. *Davis v. State,* 947 S.W.2d at 250 n. 6; *Smith v. State,* 840 S.W.2d 689, 692 (Tex.App.-Fort Worth 1992, pet. ref'd); *Petty v. State,* 696 S.W.2d 635, 639 (Tex.App.-Dallas 1985, no pet.). Once Benson concluded the investigation of the traffic violation, he could no longer lawfully detain or question Powell unless he had reasonable suspicion to believe another offense was being committed. *See Davis v. State,* 947 S.W.2d at 245 & n. 6; *see also United States v. Sharpe,* 470 U.S. at 687, 105 S.Ct. 1568.

 If during the course of a valid investigative detention, the officer develops a reasonable suspicion that the detainee was engaged in, or soon would engage in criminal activity, a continued detention is justified. *See Davis v. State,* 947 S.W.2d at 245 (citing *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991)). Powell contends that Benson lacked the reasonable suspicion necessary to continue to detain and question him after he issued the warning citation. After the initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention. *Razo v. State,* 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979); *Bustamante v. State,* 917 S.W.2d 144, 146 (Tex.App.-Waco 1996, no pet.).

Where the initial detention is based on a traffic violation, various combinations of factors will support a reasonable suspicion of criminal activity, sufficient to justify a continued detention or further questioning unrelated to the traffic violation. *See Mohmed v. State,* 977 S.W.2d at 628, where the court held that the smell of marihuana supported reasonable suspicion to detain the driver until a canine sweep could be performed; *$217,590.00, In United States Currency v. State,* 970 S.W.2d 660 (Tex.App.-Corpus Christi 1998, pet. granted), where the court held that the following information acquired during the initial stop and commercial vehicle inspection gave the officer reasonable suspicion to further detain the driver: on being pulled over the driver left the tractor cabin and went to meet the officer, the driver explained that he picked up the bulk-freight vehicle in a well-traversed parking lot but there was no seal on the vehicle to

keep the public out, the driver was unfamiliar with a bill of lading, and the driver was unable to produce a log book; *Fields v. State*, 932 S.W.2d 97, 105 (Tex.App.-Tyler 1996, pet. ref'd), where the court held that the excessive speed of the car, the extreme nervousness of the driver, his driving with a suspended license, the officer's knowledge, despite the passenger's initial denials, of the passenger's history of drug offenses, and the travelers' inconsistent versions of their recent activities supported reasonable suspicion to further detain the travelers who had been stopped for speeding; *Ortiz v. State*, 930 S.W.2d at 856, where the court held that the officer's testimony that the driver gave vague answers regarding his work as a contractor, exhibited very little knowledge about the building industry, was unable to name the members of his crew, could not remember where he bought his car, acted generally nervous, did not make eye contact, and took an undue amount of time to answer each question, supported a reasonable suspicion of drug activity to further detain the driver, who was initially stopped on suspicion of driving while intoxicated, until a canine unit could arrive; *Bustamante v. State*, 917 S.W.2d at 146, where the court held that because of the following articulated facts, the court was justified in concluding that the officer's continued detention to investigate an out-of-place screw was justified: the driver was nervous and became more nervous as the stop continued, the driver and passenger gave conflicting statements concerning the origin of their journey, the driver's address on his license was incorrect, he could not tell the officers where he had been, the officers noticed an out-of-place screw on the passenger side door, and the officer knew from his experience that contraband was often concealed in the doors of automobiles; and *Brown v. State*, 890 S.W.2d 546, 548 (Tex.App.-Beaumont 1994, no pet.), where it was held that even though the officer stopped the driver in part because he suspected he was intoxicated, and even though he concluded that he was not intoxicated, because of the driver's suspicious behavior during routine questioning during a valid traffic stop, the detention, which included a consent-search of the car for drugs, was not unreasonable. The officer testified that the driver was acting very nervous, and the driver stated he had never been arrested, then admitted that he had a prior conviction for "delivery." *Cf. Foster v. State*, 814 S.W.2d 874 (Tex.App.-Beaumont 1991, pet. ref'd), where the court found that the driver's extreme nervousness, the discrepancy in the insurance date for the car, the driver's claim to have purchased the car on the day of the stop, the absence of any hang-up clothing on an overnight trip, and the inconsistent statement of destinations gave the officer reasonable suspicion to inquire about contraband.

 Officer Benson testified that while he questioned Powell, Powell appeared nervous. He also testified that Powell and one passenger gave conflicting information about the details of their trip. Specifically, Powell said that while in Dallas the group had tried to visit the Six Flags park but it was closed, while a passenger said they left because "[w]e got to ride all of the rides we wanted to ride." Benson testified that Mooneyham revealed that he had been arrested for a prior drug possession offense. Benson also testified that while Powell said he had never been arrested, he learned from a computer check that, in fact, he had. Benson further testified that while conducting warrant checks on Powell and the other occupants, he learned that the car was not registered to any of them. Benson also said that nervousness, conflicting information, prior drug offenses, and lying about prior arrests were factors known by him to be common to drug carriers. We conclude that these factors, in light of Benson's experience and personal knowledge, constituted sufficient specific and articulable facts, when coupled with reasonable inferences therefrom, to reasonably justify Powell's post-citation detention. Even as-

suming that the purpose of the traffic stop was fulfilled at the moment Benson issued the warning citation, Benson's detainment and questioning after he issued the citation did not amount to a fishing expedition, but was based on his reasonable suspicion developed *before* he issued the citation. Powell argues that Benson questioned him about the inconsistent statements after he issued the citation and thus developed reasonable suspicion, if at all, only after the purpose of the stop had ended.[3] The record reflects, however, that Benson heard the inconsistent statements before he issued the citation. By his brief post-citation questioning, he only confirmed the inconsistency he had already noted. Because he developed a reasonable suspicion of criminal activity, Benson was justified in continuing the investigation after the initial traffic stop.

■■■■■■ Powell argues that Mooneyham's consent to search was invalid because it was obtained during an unlawful detention. This argument fails because we have concluded that the post-citation detention was lawful. Powell also suggests that Mooneyham's consent was involuntary because Benson, when asking for his consent to search the car, stated that Mooneyham could either give his consent or he could let Benson "have his dog run around the car." Benson was correct in stating that he could have his dog perform a canine sweep of the vehicle. An officer's reasonable suspicion that the vehicle contains narcotics authorizes a canine sweep. *See Crockett v. State,* 803 S.W.2d at 313. Moreover, Benson's statement actually was, "You mind if I search the car ..., or I can have my dog run around the car-whichever you want." We construe Benson's statement not as a threat to coerce

Mooneyham into consenting, but rather as an option-Mooneyham could choose to allow Benson to search or he could choose to have Benson's dog "run around the car," a procedure Benson had the right to activate. We conclude that Mooneyham's consent was not coerced. There is no contention that Benson said anything to indicate to Mooneyham that if he did not consent, he would not be allowed to leave, would be arrested, or would be charged with any offense. *See Smith v. State,* 789 S.W.2d 350, 355 (Tex.App.-Amarillo 1990, pet. ref'd).

■■■■■■ Moreover, we find that Powell consented to the search. Benson initially asked Powell if he could search the vehicle, and Powell said he did not care and that Benson should ask Mooneyham. The genuineness of the consent to search is a question of fact to be determined from the totality of the circumstances. The validity of the consent depends on whether the officer could reasonably conclude that consent was given. *See People v. Henderson,* 33 Ill.2d 225, 210 N.E.2d 483 (1965). Here, Powell's statement that he did not care if Benson searched the car, and that Benson could ask Mooneyham about it, could reasonably be construed as Powell's individual consent.

In his second point, Powell contends that the trial court erred by refusing his request at the suppression hearing to review Deputy Benson's offense report. He argues that under Texas Rule of Criminal Evidence 611,[4] he was entitled to inspect the document and cross-examine the witness about it. Texas Rule of Criminal Evidence 611, the rule in effect at the time of Powell's hearing, provided:

> If a witness uses a writing to refresh his memory for the purpose of testifying

---

**3.** Powell also argues that his behavior was as consistent with innocent activity as with criminal activity and thus it did not give rise to reasonable suspicion. However, this argument is no longer relevant in the determination of reasonable suspicion. *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997).

**4.** Powell's pretrial hearing took place on February 13, 1998, before the enactment of the new Rules of Evidence, which became effective March 1, 1998. Rule of Evidence 612 replaced former Rule of Criminal Evidence 611 and presented no changes to the rule. *See* TEX.R. EVID. 612.

either while testifying or before testifying, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto.

TEX.R.CRIM. EVID. 611 (Vernon 1997). The State concedes that the trial court erred under Rule 611, but contends that the error was harmless. The State also contends that Powell's objection at trial was different from his objection on appeal and thus Powell did not preserve the error for review. Specifically, the State argues that at the time Powell objected, the court already had given him an opportunity to cross-examine Benson and, therefore, his objection at trial was not based, as it is now, on his inability to cross-examine the witness. We disagree.

■ At the suppression hearing, the court heard from two attorneys, one representing Powell and the other representing one of Powell's passengers, Brandy Johnson. The trial court's ruling at the suppression hearing would determine whether the evidence would be admitted in the separate trials of these two defendants. Powell's attorney, Kevin Settle, was the first to cross-examine Benson. The record does not indicate whether Benson referred to his report during that cross-examination; therefore, we assume that he did not and that Settle did not waive his objection. When Johnson's attorney, David Moore, cross-examined Benson, the record indicates for the first time that Benson referred to his offense report to refresh his memory. Mr. Moore requested that he be allowed to inspect the report for purposes of cross-examination. The court stated, "No." Mr. Moore asked, "Is the Court denying my motion?" The Court stated,

"I've denied it. You're not entitled to it at this point under the Rule." A few moments later, Powell's attorney repeated Mr. Moore's objection in a substantially similar form:

MR. SETTLE: Your Honor, for the record, I would also so make a request to look at the reports that are being marked.

THE COURT: It will be the same ruling.

Although Mr. Settle had already conducted his cross-examination, the record indicates that after Mr. Moore completed his examination, Mr. Settle conducted a short recross-examination of Benson. By repeating Mr. Moore's objection, Mr. Settle informed the court that he also objected to the court's ruling, albeit against Mr. Moore, thereby preserving the error for his own client.

■ We now examine whether refusing to allow Powell's counsel an opportunity to inspect the document and cross-examine on the basis of it was error. Texas Rule of Criminal Evidence 611 allows a witness to refer to any writing necessary to refresh the witness's memory while testifying. Further, it offers the opposing party an opportunity to discover that same document. See TEX.R.CRIM. EVID. 611 (Vernon 1997). The opposing party is entitled (1) to have it produced at the hearing or trial, (2) to view it, (3) to cross-examine on it and, (4) while the party calling the witness may not introduce the writing, to have it or relevant portions of it introduced as evidence. While Rule 611 speaks in terms of entitlement, failure to allow inspection of documents used to refresh memory is error subject to harmless error analysis.

The Court of Criminal Appeals has removed the trial court's denial of the right to inspect documents used to refresh memory from harmless error analysis under TEX.R.APP. P. 81(b)(2), now Rule 44.2, and instead has applied a judicially crafted test

for harmless error.[5] *See Young v. State*, 891 S.W.2d 945, 948 (Tex.Crim.App.1994). In *Young*, the court held that the trial court erred by refusing to compel disclosure of business records that the witness testified to using in preparation for trial, and remanded the case to the court of appeals to conduct a harm analysis pursuant to Rule 81(b)(2). *See Young v. State*, 830 S.W.2d 122 (Tex.Crim.App.1992). After the court of appeals held the error was harmless, the Texas Court of Criminal Appeals granted review to determine whether the appeals court had conducted a proper harm analysis. The court noted that, although the error concerned a violation of an evidentiary rule rather than a constitutional provision, such an error had constitutional implications because it "effectively exclud[ed] evidence which could be used in cross-examination." *Young v. State*, 891 S.W.2d at 948. The court held that, rather than an analysis under Rule 81(b)(2), when evidence has been excluded via the erroneous limitation of cross-examination, appellate courts should apply the analysis for assessing harm in Confrontation Clause cases as set out in *Shelby v. State*, 819 S.W.2d 544, 547 (Tex.Crim.App.1991).[6]

The *Shelby* analysis is essentially a three-prong process.[7] First, we assume that the damaging potential of the cross-examination was fully realized. Second, with that assumption in mind, we review the error in connection with the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony is cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. Third, in light of the first two prongs, we determine if the error was harmless beyond a reasonable doubt. *Shelby v. State*, 819 S.W.2d at 547.

Before beginning the analysis under *Shelby*, it is important to note that the purpose of allowing an adverse party to inspect documents used by a witness to

5. Prior to *Young v. State*, 891 S.W.2d 945 (Tex.Crim.App.1994), the court conducted a harm analysis under Rule 81(b)(2). *See Robertson v. State*, 871 S.W.2d 701, 709 (Tex. Crim.App.1993). In *Robertson*, the court considered whether (1) not allowing the *admission* of a psychological evaluation used by a testifying expert to refresh his memory, and (2) not permitting the *inspection* of the document for purposes of cross-examination, constituted harmful error. In making these assessments, the court analyzed the second consideration in conjunction with the first.

> When the writing is used by the witness to refresh his memory, the opposing party upon request can *inspect* the document and use it for purposes of cross-examination. .... Further, the opposing party can *introduce* the document, not for the truth of the matter asserted, but for use by the jury in comparing the document to the witness's testimony.

*Id.* at 708 (emphasis added) (citations omitted). The court noted that evidence admitted under Rule 611 is admitted for purposes of impeaching the testifying witness rather than for its substantive value. Without commenting further on the issue of *inspection*, the court held that because the psychological

evaluation did not contradict the expert witness's testimony at trial, the document had no impeachment value and thus its *exclusion* was harmless under Rule 81(b)(2). *See id.* at 709.

6. The *Shelby* analysis also has been applied to a case in which the trial court permitted inspection of the document and cross-examination thereon but denied the party's request to admit the document into evidence. *See de la Rosa v. State*, 961 S.W.2d 495, 498 (Tex. App.-San Antonio 1997, no pet.). The court distinguished the case from *Robertson*, noting that because the *Robertson* court concluded that the excluded evidence had no impeachment value, it was forced to cut short its harm analysis. *See id.*

7. The State does not cite *Young* or *Shelby*, but instead cites *Yates v. State*, 941 S.W.2d 357 (Tex.App.-Waco 1997, pet. ref'd), in urging this Court to evaluate the impeachment value of the documents. While we reach the result the State urges, *Yates* is inapplicable. There, the trial court's error was not its failure to allow inspection of the document but its failure to conduct an *in camera* hearing as required by Rule of Evidence 611, and the court cited *Robertson* as authority for its harm analysis. *See Yates v. State*, 941 S.W.2d at 363.

refresh memory under Rule 611 is impeachment. *See Robertson v. State,* 871 S.W.2d 701, 709 (Tex.Crim.App.1993); Steven Goode Et Al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal § 612.3 at 459 (2d ed.1993). In *Young,* the complaining party sought to inspect a business record to establish that, contrary to the witness's testimony, the witness had hired the defendant to do remodeling work on the day of the alleged burglary. In *Young,* the record did not contain the excluded evidence, so the court assumed that the excluded business records would show that the witness had hired the defendant. *See Young,* 891 S.W.2d at 948–49. Here, although the trial court indicated that it would place Benson's offense report under seal, it appears that it was not sealed, because it has been openly included in the appellate record. The State contends that because the report is included in the record, Powell failed to preserve error because he did not inspect the report and allege his specific harm. In light of our findings, it is not necessary for us to determine whether Powell preserved error, but we note that it is unclear whether Powell knew he had an opportunity to inspect the report. Having reviewed the report, we find nothing in it that Powell could have used at trial to impeach Benson. Instead, the report supports Officer Benson's testimony. Unable to assume, as in *Young,* that specific impeachment evidence existed and that its damaging potential on cross-examination was fully realized, we must cut short our analysis. While the trial court erred by failing to allow Powell's counsel to inspect the offense report, we find that the error was harmless.

▇▇▇ In his third point, Powell contends that the trial court erred in admitting into evidence at the guilt/innocence stage of trial a subsequent extraneous drug possession offense. On November 12, 1997, a state trooper stopped Powell, who was out on bond for the offense underlying this appeal, for a traffic violation. The trooper got Powell's consent to search his vehicle and subsequently arrested him for possession of a controlled substance. Powell argues that, pursuant to Tex.R. Evid. 404(b), this evidence of other crimes, wrongs, or acts is inadmissible to prove his character, and that none of the exceptions of Rule 404(b) applies.

#### Standard of Review

▇▇▇ If evidence of an extraneous offense is relevant only to show character conformity, the trial court has no discretion to admit the evidence over objection. *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App.1990). But the trial court has the discretion to determine *whether* such evidence does, in fact, serve a legitimate purpose other than as character evidence. *Id.* The Court of Criminal Appeals has noted that the trial court's relevancy determination is not exclusively a function of rule and logic:

> The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Id.* at 391 (quoting former Tex.R.Crim. Evid. 401). In establishing the contours of appellate review of a trial court's relevancy determination, the court further noted,

> Reasonable men may disagree whether in common experience a particular inference is available. Where there is room for such disagreement, an appellate court that reverses a trial court's ruling on relevancy accomplishes nothing more than to substitute its own reasonable perception of common experience for that of the trial court.

*Id.* at 391. We therefore uphold the trial court's ruling absent an abuse of discretion. *Id.* As long as the trial court's ruling is at least within the zone of reasonable

disagreement, we will not intercede. If we find that the trial court abused its discretion, we conduct a harmless error review. *Id.*

DISCUSSION

 The general rule is that evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character, but evidence of other crimes, wrongs, or acts is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R. EVID. 404(b). If a Rule 404(b) objection is made to extraneous offense evidence, the proponent of the evidence must persuade the trial court that the evidence has relevance apart from character conformity, e.g., that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity, or preparation leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing the absence of mistake or accident. *Montgomery v. State,* 810 S.W.2d at 387–88. Evidence that is relevant is presumed admissible. If the court overrules the objection, in order to preserve error the objecting party must also make a Rule 403 objection, explaining that the prejudicial potential substantially outweighs the probative value of the evidence. TEX.R. EVID. 403; *Montgomery. v. State,* 810 S.W.2d at 387–88.

The indictment against Powell alleged that Powell "did then and there ... intentionally and knowingly possess with intent to deliver a controlled substance...." Because of the indictment, "knowingly possess" and "intent to deliver" became material issues that the State was required to prove beyond a reasonable doubt. *Morgan v. State,* 692 S.W.2d 877, 880 (Tex. Crim.App.1985). The trial court admitted the evidence of the extraneous offense, instructing the jury that it was relevant to show only what the State alleged in the indictment: that Powell knew the substance he possessed was cocaine and that

he specifically intended to deliver the cocaine.

Rule 401 defines relevant evidence as that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. It is at least subject to reasonable debate whether a subsequent, almost identical offense tends to show Powell's knowledge that the substance he possessed on the occasion involved here was illegal. In addition, the subsequent offense showed that Powell was traveling on the same highway with multiple bags of cocaine only a few weeks after the offense underlying this appeal. We believe that the trial court could have reasonably concluded that this subsequent act tended to make more probable the allegation that Powell intended to deliver the cocaine involved in the present offense. *See Hurtado v. State,* 722 S.W.2d 184 (Tex.App.-Houston [14th Dist.] 1986, pet. ref'd), where the court held that an extraneous offense involving similar amounts of cocaine sent to the same location only four days earlier was relevant to the issue of intent to deliver. The fact that the extraneous conduct occurred after the acts constituting the offense on trial does not render the evidence inadmissible under Rule 404(b). *See Torres v. State,* 794 S.W.2d 596 (Tex.App.-Austin 1990, no pet.). We find that the trial court did not abuse its discretion in admitting the evidence.

 Although Powell argued at trial that the probative value of the extraneous offense was substantially outweighed by unfair prejudice, he did not brief the argument for appeal, and any error the court may have committed in conducting the Rule 403 balancing test is waived.

For the reasons stated, we affirm the judgment.

Concurring Opinion by Justice GRANT.

The evidence does not show that Powell violated Section 545.060 of the Transporta-

tion Code. TEX. TRANSP. CODE ANN. § 545.060 (Vernon 1999). He was traveling on a divided highway and crossing from one lane to another lane of traffic traveling in the same direction. It is not a traffic violation unless the movement is shown to be unsafe. *Hernandez v. State,* 983 S.W.2d 867 (Tex.App.-Austin 1998, pet. ref'd).

The officer's testimony indicated that Powell was in the inside lane and moved right to cross the center stripe and then moved back left into the inside lane. He testified that he could not testify that Powell endangered any other cars in crossing the line. The State made no showing that such a movement was not safely made; therefore, no violation of this statute has been shown.

This was not raised on appeal, but because the majority discussed this matter, I find it necessary to point this out.