**Opinion filed August 5, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00098-CR

_____

## ADAM THOMAS HOOD, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 355th District Court**

**Hood County, Texas**

**Trial Court Cause No. CR10984**

### M E M O R A N D U M   O P I N I O N

The jury convicted Adam Thomas Hood of possession of less than one gram of methamphetamine and assessed his punishment at twenty-four months confinement and a fine of $5,000. We affirm.

### I. *Background Facts*

Deputy James Luckie of the Hood County Sheriff's Office observed a blue pickup parked partially in the roadway. Deputy Luckie was concerned that the pickup posed a traffic hazard, and he stopped to find the vehicle's owner. A woman that he recognized approached and told him that the pickup belonged to her friend "Adam" and that "Adam" and her husband were in the

house in front of which the pickup was parked. Deputy Luckie knew the woman's husband had an outstanding warrant. He called for backup and then went into the residence to arrest him. A second individual was inside, and he identified himself as Adam Hood. A computer check revealed that Hood also had an outstanding warrant, and Deputy Luckie arrested him too.

Hood told Deputy Luckie that the pickup belonged to him, and he consented to a search of it. Deputy Luckie found a backpack with clothing and other articles. While searching the clothing, he found a syringe and a hypodermic needle. The syringe appeared to be used and to contain a small amount of some substance. Deputy Luckie was concerned that the syringe was drug paraphernalia, and he seized it and sent it to the drug lab for testing. William L. Todsen, the forensic scientist responsible for testing the syringe, testified that he did not observe visible residue but that a chemical test revealed that the syringe contained a trace amount of methamphetamine.

## II. *Issues*

Hood challenges his conviction by contending that the trial court erred when it admitted evidence of extraneous acts and that legally insufficient evidence supports his conviction.

## III. *Character Evidence*

Hood argues that the trial court erred by admitting evidence during the guilt/innocence phase that he missed two scheduled urinalysis screenings as conditioned by his bond. We review a trial court's decision to admit evidence under an abuse of discretion standard. *Allen v. State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003). We will uphold the trial court's decision if its ruling falls within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). If the evidence is admissible for any purpose, the trial court's decision to admit it does not constitute error regardless of the reason given by the trial court for its decision. *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982).

Evidence of other crimes, wrongs, or acts is not admissible to prove that a person acted in conformity with his character. TEX. R. EVID. 404(b). However, extraneous offense evidence may be admissible if relevant for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*; *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (evidence of a person's bad character, as evidenced by another crime, wrong, or act, may be admissible when it is relevant to a noncharacter conformity fact of consequence in the case). Evidence is relevant if it has the tendency to make the

2

existence of a fact more or less probable than it would have been absent the evidence.  TEX. R. EVID. 401.

The State argues that Hood's failure to show for two drug tests was admissible as consciousness of guilt, and it analogizes this to evidence of flight.  It is well settled that evidence of flight or escape may be admissible to establish guilt, subject only to the requirement of relevancy to the offense under prosecution.  *See Bigby v. State*, 892, S.W.2d 864, 883 (Tex. Crim. App. 1994).  When a defendant challenges the relevancy of flight evidence, he must affirmatively show that the flight was directly connected to some other transaction and not the offense at trial.  *Lee v. State*, 176 S.W.3d 452, 462 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

Consciousness of guilt has been described as "acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial."  *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994).  The logical inference from Hood's failure to appear is that he was concerned about passing the tests because of recent drug use.  Even though Hood's conduct can be viewed as avoidance behavior, it is not behavior aimed at avoiding a conviction for this possession charge.  It is, instead, an attempt to avoid being charged with a new offense.  Obviously, there is a connection between the drug tests and the possession charge because a failed or missed drug test would have impact on Hood's bail and, thus, where Hood awaited trial; but not taking a drug test did not reduce the likelihood of prosecution, conviction, or incarceration for possession.  Hood's failure to appear for two drug tests is not admissible as consciousness of guilt.

The State next argues that the evidence was admissible to prove that Hood intentionally or knowingly possessed the methamphetamine, and it cites *Powell v. State*, 5 S.W.3d 369 (Tex. App.—Texarkana 1999, pet. ref'd), in support of this proposition.  In *Powell*, the defendant was charged with possession of cocaine with intent to deliver.  He was originally arrested following a traffic stop and search of his car that revealed narcotics.  *Id.* at 374.  While on bond, Powell was stopped for a traffic violation and, after a search of his car, was arrested a second time for possession of a controlled substance.  *Id.* at 382.  The Texarkana court held that this subsequent arrest was admissible because evidence that Powell was traveling on the same highway with multiple bags of cocaine only a few weeks after his first arrest made it more probable that he intended to deliver the cocaine found in his car during the first arrest.  *Id.* at 383.

3

The Texarkana court's analysis of relevancy focused on the State's obligation to prove intent. The State argues that, because it was required to prove that Hood knowingly or intentionally possessed the methamphetamine in the syringe, a similar result should follow in this case. The concern this analysis causes is that it would significantly reduce, if not reverse, Rule 404(b)'s general prohibition on the introduction of extraneous acts evidence in possession cases because evidence that a defendant has used or possessed drugs on another occasion would always be admissible to prove intent in the charged offense. The Texarkana court's analysis was not so broad. The court noted the substantial similarity between the two arrests, and it cited *Hurtado v. State*, 722 S.W.2d 184 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd), a case involving two arrests within four days for possession of cocaine that were similar in amount and that were sent to the same location, in support of its holding. *Id.* at 188. The same similarity between the charged offense and the missed tests is not present in this case. Thus, Hood's failure to appear was not admissible to prove intent.

Finally, the State argues that the evidence was admissible to rebut a false impression about Hood's credibility. Hood testified that he was driving the pickup under a test-drive agreement. He acknowledged that the backpack Deputy Luckie searched was his and that it was in the bed of the pickup. He denied that the syringe or the pants in which it was found were his, claiming that the pants belonged to an ex-employee. The State contends that this testimony left the jury with the false impression that Hood was not knowledgeable about drug use or paraphernalia. We disagree. This was not the type of testimony – such as "I have never …" – that would have opened the door to contradictory evidence.

The trial court abused its discretion when it allowed the State to introduce evidence that Hood failed to appear for two drug tests. We conduct a harm analysis in light of the whole record. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Because the erroneous admission of evidence is nonconsitutional error, we disregard such error unless it affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Rich*, 160 S.W.3d at 577. A substantial right is one that has a substantial and injurious effect or influence in determining the jury's verdict. *Rich*, 160 S.W.3d at 577. A substantial right is not affected by the erroneous admission of evidence if, after examination of the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). In assessing the likelihood that the jury's decision

4

was adversely affected, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The trial court's error did not affect Hood's substantial rights. The testimony was brief. Hood testified on his own behalf, and during cross-examination, the State initially asked him only a single question: "So twice – twice you haven't shown up for urinalyses tests while you've been on bond for this case?" Hood agreed and, on redirect, explained that he missed one test because he was working in East Texas during a hurricane. The State then pointed out that this did not excuse his second absence, and Hood responded that he "was just trying not to get fired from [his] job." There was no further reference to the tests during the trial, and the State did not mention them during its closing argument. When the State argued credibility, it instead criticized the plausibility of Hood's story and reminded the jury that Hood had two prior convictions for theft. The evidence was brief and was not emphasized by the State. Hood had a prior criminal record, and as detailed further in the discussion of the sufficiency of the evidence, there was direct evidence connecting Hood with the syringe. Therefore, the error was harmless. Issue One is overruled.

## IV. *Sufficiency of the Evidence*

Hood contends in his second issue that the evidence supporting his conviction is legally insufficient. When the sufficiency of the evidence is challenged, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App. 2000).

To prove unlawful possession of a controlled substance, the State must prove that Hood exercised control, management, or care over the substance and that he knew the substance was contraband. *Pointdexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). There is no requirement that the defendant possess a visible or usable quantity of a controlled substance to support a conviction. *See Muckleroy v. State*, 206 S.W.3d 746, 748 (Tex. App.—Texarkana 2006, pet. ref'd). But when the defendant possesses a trace amount, the State must prove

through evidence, other than mere possession, that the defendant had knowledge that the substance was contraband. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

Hood does not dispute that he had custody and control of the pickup and backpack or that the syringe was found in the pocket of a pair of pants in his backpack. Instead, he contended that the pants belonged to a former employee who had changed clothes and put his pants in Hood's backpack. The pants, however, also had several paycheck stubs made out to Hood. Hood explained this by testifying that he had given them to his former employee to make copies. The jury was free to disbelieve the testimony of any of the witnesses. It could rationally determine that Hood's explanation for the presence of the pants was implausible and that they were, in fact, his pants. The jury could also consider the lack of any other explanation for the syringe's presence, such as a medicine container, and conclude that Hood intentionally or knowingly possessed methamphetamine. Hood's second issue is overruled.

V. *Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


August 5, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6