

Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-10-00533-CR

Luis **CANTU**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 07-1793-CR
Honorable Dwight E. Peschel, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  September 14, 2011

AFFIRMED

Appellant Luis Cantu appeals from a judgment of conviction for felony possession of a controlled substance. Cantu filed a pre-trial motion to suppress evidence, which was denied by the trial court. The trial court made no explicit findings of fact in support of its ruling. In one issue, Cantu argues the trial court erred in denying the motion to suppress. We overrule Cantu's issue and affirm the judgment of conviction.

**BACKGROUND**

Guadalupe County sheriff's deputy Trey Kelly was the sole witness to testify at the suppression hearing. According to Kelly, a source told him that controlled substances were being sold in a trailer park in Guadalupe County, Texas. Kelly was also told that a white Chevy Impala with black tinted windows was involved in some of these drug transactions. On June 12, 2007, Kelly drove to the trailer park and saw a white Chevy Impala with black tinted windows leaving the trailer park. Kelly decided to follow the car. After following the car for seven to ten miles, Kelly saw the car swerve onto the improved shoulder. Shortly thereafter, Kelly saw the car swerve onto the improved shoulder a second time. On this particular stretch of road, the shoulder was demarcated by a white line. The swerving was not minor; about half the car crossed onto the shoulder. Kelly did not believe the car's actions were consistent with moving over to the side of the road to allow another vehicle to pass or taking necessary evasive action. After the car swerved the second time, Kelly concluded the maneuvers were reckless and decided to pull the car over for traffic violations.

After the car pulled onto the shoulder and parked, Kelly approached the car and identified himself to the driver, whom he later learned was Cantu. Kelly asked Cantu to step out of the car and accompany him to the shoulder area behind the car. Cantu complied. Once there, Kelly obtained Cantu's driver's license and proof of insurance and briefly interviewed Cantu. Kelly also asked for and was granted consent to conduct a pat down search of Cantu. During the pat down search, Kelly felt a lump in Cantu's shirt pocket. Kelly asked Cantu what he had in his shirt pocket. In response, Cantu pulled something out of his shirt pocket and held the item in his hand in a clenched fist. Initially, Kelly was unable to see the item. Kelly then re-patted Cantu's shirt and felt that the lump was no longer there. Kelly and Cantu kept talking, and eventually

Kelly could see a small plastic bag sticking out of Cantu's clenched fist and could tell there was a white powdery substance in the bag. Believing Cantu had illegal narcotics, Kelly grabbed Cantu's hand and took several small plastic bags from Cantu. Lab tests showed the white powdery substance in the bags to be methamphetamine.

Finally, Kelly testified that at the time he discovered the methamphetamine he had neither completed investigating the traffic violations, nor had he checked for any outstanding warrants for Cantu's arrest. Kelly further testified that the time that elapsed between Cantu's car being pulled over and the discovery of the methamphetamine was less than five minutes.

### STANDARD OF REVIEW

When reviewing a trial court's decision to deny a motion to suppress, we afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006). We afford the same amount of deference to trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id*. We conduct a de novo review when, as here, the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor. *Id*. Finally, in the absence of explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

**DISCUSSION**

If an officer has a reasonable basis for suspecting that a person has committed a traffic violation, he may legally initiate a traffic stop. *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.— Texarkana 1999, pet. ref'd) (citing *Drago v. State*, 553 S.W.2d 375, 377-78 (Tex. Crim. App. 1977)). A routine traffic stop resembles an investigative detention. *Id*. at 375 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). To determine the reasonableness of an investigative detention, courts apply the *Terry* test: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the stop in the first place. *See Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

Here, Cantu acknowledges the first prong of the *Terry* test was met: Kelly's action in stopping the vehicle for a traffic violation was justified at its inception. Cantu's sole argument is that the second prong of the *Terry* test was not satisfied. As to the second prong of the test, the detention must be temporary and last no longer than necessary to investigate the traffic violation. *See Davis*, 947 S.W.2d at 244. During a traffic stop, the officer has a right to check for outstanding warrants and request a driver's license and insurance papers. *Id*. at 245 n.6; *Powell*, 5 S.W.3d at 377. Additionally, the officer may ask about the driver's destination and purpose of travel during a valid detention, and the ownership of the vehicle. *Powell*, 5 S.W.3d at 377; *see State v. Cardenas*, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). It is only after a check for outstanding warrants is completed, and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop violation is fully resolved. *Kothe*, 152 S.W.3d at 63-64. There is no particular order in

which an officer must conduct the investigation. *Id*. at 65-66. However, once the investigation of the traffic violation is concluded, an officer can no longer lawfully detain or question a driver unless he has reasonable suspicion to believe another offense is being committed. *Powell*, 5 S.W.3d at 377. There are no rigid time limitations on these detentions. *Kelly v. State*, 331 S.W.3d 541, 549 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Kothe*, 152 S.W.3d at 64). In deciding whether the scope of a *Terry* detention is reasonable, the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop. *Kothe*, 152 S.W.3d at 63.

Cantu argues the trial court erred in denying his motion to suppress because his detention was not reasonably related in scope to the circumstances that justified the initial traffic stop. In support of this argument, Cantu contends Kelly did not promptly investigate the alleged traffic violations, but "milled about" asking questions unrelated to the reasons he stopped Cantu in the first place. We disagree with Kelly's characterization of the record. Kelly testified that he obtained Cantu's driver's license and proof of insurance and then went on to interview Cantu. Nothing shows the questions Kelly asked Cantu were beyond the scope of a traffic stop. Kelly inquired about Cantu's previous whereabouts, which is standard procedure during a traffic stop. *See Kelly*, 331 S.W.3d at 550; *Cardenas*, 36 S.W.3d at 246. Cantu told Kelly that he was on his way back from court and that he had been at his mother's house cutting down a tree. Cantu also told Kelly he had made no other stops that day. These responses aroused Kelly's suspicion for several reasons. First, Kelly knew that Cantu had just made a stop at the trailer park. Second, Cantu's kempt appearance was not consistent with having cut down a tree. Moreover, the overall duration of the traffic stop was relatively short; Kelly discovered the controlled substance less than five minutes after the stop was initiated. The record does not support the conclusion that

Kelly strayed from the initial purpose of the stop or that Kelly unnecessarily delayed the detention.

Next, Cantu contends Kelly abandoned his investigation of the traffic violations, and that this abandonment came well before Kelly obtained consent to conduct the pat down search. Cantu argues that because Kelly abandoned his investigation of the traffic violations before he requested consent to conduct the pat down search, consent must be excluded from this court's analysis. Again, we disagree. Contrary to Cantu's assertion, the record does not show Kelly had abandoned his investigation of the traffic violations when he received consent for the pat down search and found the controlled substance. As previously noted, Kelly's interview was consistent with the type of interview conducted in a standard traffic stop. Kelly asked Cantu about his whereabouts and about a possible discrepancy in his proof of insurance. Kelly further testified that when he found the controlled substance he had yet to check for outstanding warrants, had yet to ask about why Cantu was driving on the shoulder, and had yet to issue a citation or warning. Again, the short duration of the traffic stop further supports the conclusion that Kelly had not completed his investigation when he discovered the controlled substance. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the investigative detention in this case was reasonably related in scope to the circumstances that justified the stop in the first place.

## CONCLUSION

We, therefore, conclude the trial court did not err in denying Cantu's motion to suppress. The judgment of conviction is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH