In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00144-CR


______________________________




LARRY DONNELL DAVIS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28511-B




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Larry Donnell Davis (1) appeals from his conviction by a jury for the offense of
possession of a firearm by a felon. The court assessed his punishment at eight years'
imprisonment. 

 Larry contends his conviction should be reversed because, through no fault of his
own, he was unable to obtain a complete reporter's record, and because the evidence is
factually and legally insufficient to support the conviction. 

 We first address the problem with the record. (2) When we initially received the
reporter's record, the voir dire of the venire was not included. The court reporter, Sandi
Turner, transmitted a letter to this Court in which she stated she could not prepare a
complete and accurate transcription of the jury voir dire in this trial because of a
simultaneous physical malfunction in her manual transcriber and her computer system, and
because her audiotape backup did not pick up all portions of the voir dire. (3) She stated that
she had sought the assistance of the manufacturer of the software used for the computer
program in retrieving the data and that it was unsuccessful in retrieving the material. She
stated that only part of her manual stenographic notes were readable. 

 We abated the appeal to the trial court with directions to conduct a full adversarial
hearing to determine the state of the reporter's notes and whether the voir dire could be
completely and accurately transcribed. Pursuant to our order, the trial court conducted a
hearing at which Turner brought her equipment and materials, and at which she testified. 
The court then entered findings and conclusions about the state of the reporter's record. 

 The record from that hearing and the findings are now before this Court. The trial
court found that the court reporter's stenograph machine malfunctioned in such a way that
the manual paper printing of her keystrokes was only partially legible and that not all of the
jurors' responses during voir dire could be heard on the audiotape of the proceedings. Her
keystrokes on the machine were also, however, recorded onto a computer diskette. The
reporter stated that she had, despite seeking assistance, been unable to retrieve the voir
dire information from the diskette. 

 The trial court directed Shelly Davis, another court reporter, to take Turner's paper
notes, computer diskette, and the audiotape, and attempt to complete a record of the voir
dire. The court's findings reflect that, ten days later, Shelly reported to the court that she
had been able to recover the computer files from Turner's original diskette and that she
was able to use that record, in conjunction with the paper notes, to compile a complete voir
dire record. In conclusion, based on the information provided by Shelly, the court found
she was able to make a complete and accurate transcription of the voir dire proceeding,
which it then submitted to this Court. Based on the trial court's determination, we conclude
that a complete record has been presented to this Court.

 Larry next contends the evidence is legally and factually insufficient to support the
conviction.

 In our review of the legal sufficiency of the evidence, we view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000). In determining the factual sufficiency of the evidence to establish the elements of
the offense, we view all the evidence in a neutral light and set aside the verdict only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Johnson, 23 S.W.3d at 7. 

 The evidence shows that, during the early morning hours of a night in May 2001,
Longview police officer Lisa Chatterton responded to a call concerning a disturbance at a
one-bedroom duplex. Chatterton testified that on arrival she observed Larry and Marilyn
Davis arguing loudly just past a screen door inside the duplex. Chatterton entered the
residence and separated the two individuals who were arguing. She observed another
individual, a male, sitting on a sofa. Chatterton asked Marilyn to go outside the house onto
a porch and told Larry to remain inside. Chatterton went outside with Marilyn and testified
that, once she and Marilyn were out of the house, Larry latched the screen door and closed
the inside door and locked it. Chatterton testified that a few seconds later she heard a loud
gunshot from inside the house. She and Marilyn quickly retreated to the street, where
another police officer had arrived. Chatterton reported the gunshot over the police radio,
which prompted more officers to come to the scene, where they set up a perimeter around
the house. Larry did not leave the house, and eventually a SWAT team was called to the
scene. After failed efforts to make contact with Larry by telephone, a chemical agent was
fired into the house. Larry and another female then came out of the house. Chatterton
testified she did not know what happened to the person she observed earlier sitting on the
sofa. The SWAT team then checked the house and found a shotgun containing a single,
fired hull under the bed.

 Larry contends the evidence is insufficient because it does not show he "possessed"
the weapon. To establish unlawful possession of a firearm by a felon, the State must show
the accused was previously convicted of a felony offense and possessed a firearm after
the conviction and before the fifth anniversary of his release from confinement from
supervision under community supervision, parole, or mandatory supervision, whichever
date is later. Tex. Pen. Code Ann. § 46.04(a)(1) (Vernon Supp. 2003); Martinez v. State,
986 S.W.2d 779, 780 (Tex. App.-Dallas 1999, no pet.). Possession is a voluntary act if
the possessor knowingly obtains or receives the thing possessed or is aware of his control
of the thing for a sufficient time to permit him to terminate his control. Tex. Pen. Code Ann.
§ 6.01(b) (Vernon 1994). To support a conviction for possession of a firearm, the state
must show (1) that the accused exercised actual care, control, or custody of the firearm,
(2) that the accused was conscious of his or her connection with it, and (3) that he or she
possessed the firearm knowingly or intentionally. See Brown v. State, 911 S.W.2d 744,
747 (Tex. Crim. App. 1995); Jones v. State, 963 S.W.2d 826, 830 (Tex. App.-Texarkana
1998, pet. ref'd).

 The evidence used to satisfy these elements may be direct or circumstantial. See 
Brown, 911 S.W.2d at 747; Jones, 963 S.W.2d at 830. Whether direct or circumstantial
evidence is used, the state must establish that the accused's connection with the firearm
was more than just fortuitous. Nguyen v. State, 54 S.W.3d 49, 53 (Tex. App.-Texarkana
2001, pet. ref'd); see Brown, 911 S.W.2d at 747; Jones, 963 S.W.2d at 830. However,
when the firearm is not found on the accused's person or is not in the accused's exclusive
possession, additional facts must affirmatively link the accused to the contraband. 
Nguyen, 54 S.W.3d at 53; see Jones, 963 S.W.2d at 830. The affirmative links typically
are shown by the existence of evidence about the circumstances in which the item is found
and the logical force that evidence has in combination.

 Relevant factors discussed by courts as establishing affirmative links include such
matters as whether: (1) the contraband was in a place owned by the accused; (2) the
contraband was conveniently accessible to the accused; (3) the contraband was in plain
view; (4) the contraband was found in an enclosed space; (5) the conduct of the accused
indicated a consciousness of guilt; (6) the accused had a special relationship to the
contraband; and (7) affirmative statements connect the accused to the contraband. 
Corpus v. State, 30 S.W.3d 35, 38 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

 In this case, the duplex was rented by Larry. He lived there, and the lease indicates
he had done so for nearly a year before this incident. The shotgun was found under the
bed in the one-bedroom residence. This evidence, together with the testimony of
Chatterton that she heard the shotgun blast shortly after she observed Larry and Marilyn
in a heated argument and only a few seconds after she observed Larry latch the screen
door and close and lock the inside door, was legally sufficient for the jury to reasonably
conclude Larry was in possession of the firearm as alleged. 

 Under a factual sufficiency review, we also look to other evidence to see if the
verdict is against the overwhelming weight of the evidence. In this case, there was no
evidence to show the firearm belonged to any other person or to support any alternative
theory about the possession of the firearm. The evidence is thus also factually sufficient
to support the verdict.

 Larry next contends the trial court erred by overruling his motion to suppress the
firearm which was obtained when the SWAT team went through the house. A trial court's
decision to grant or deny a motion to suppress is reviewed under an abuse of discretion
standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At the
suppression hearing, Detective Seth Vanover testified he had obtained written consent to
search the house from Marilyn. He testified she had informed him she lived there, and
thus he presumed she had authority to give consent. At the hearing, Marilyn testified she
only lived at the house on weekends. She is not Larry's wife. (4) Under these facts, it is
arguable she does not have actual authority to consent to a search. That is not, however,
the operative question, because even when the facts do not support a finding of actual
authority, a search is reasonable if the consent-giver apparently has actual authority. 
Illinois v. Rodriguez, 497 U.S. 177, 188 (1990); Corea v. State, 52 S.W.3d 311, 317 (Tex.
App.-Houston [1st Dist.] 2001, pet. ref'd).

 Based on Marilyn's statements at the scene, it was reasonable for the officer to
conclude she could consent to the search. Thus, the trial court did not abuse its discretion
by overruling the motion to suppress. 

 Larry next contends the trial court erred by refusing to allow counsel to review an
offense report used by a testifying officer during the pretrial suppression hearing to refresh
her memory. While Chatterton was testifying, she stated that she had made an offense
report and that she had refreshed her memory with the report before testifying. Counsel
requested that the State provide a copy of the report. The trial court stated that, "You're
not entitled to it at this stage of the proceedings," and counsel asked that a copy be made
part of the record. The State then asked the trial court to seal the report, and the trial court
did so. 

 This Court has previously held in Powell v. State, 5 S.W.3d 369, 380 (Tex.
App.-Texarkana 1999, pet. ref'd), in addressing this same question, that Tex. R. Evid. 612
requires production of material used to refresh the witness' memory during any hearing,
not merely during a trial in front of a jury. (5) Our decision in that case controls, as does the
plain language of the rule. Counsel was entitled to review that document, and the trial
court committed error by refusing to allow him to do so.

 The State suggests this case differs from Powell because in this case the trial court
immediately ordered the document placed under seal. The State is apparently relying on
the following language in Powell for support of its position that, if a writing is placed under
seal, it need not be provided to opposing counsel even if a witness has used it to refresh
his or her memory: 

 [A]lthough the trial court indicated that it would place Benson's offense report
under seal, it appears that it was not sealed, because it has been openly
included in the appellate record. The State contends that because the report
is included in the record, Powell failed to preserve error because he did not
inspect the report and allege his specific harm. In light of our findings, it is
not necessary for us to determine whether Powell preserved error, but we
note that it is unclear whether Powell knew he had an opportunity to inspect
the report. 


Powell, 5 S.W.3d at 382.

 In Powell, we simply stated that, although there was a mention of placing the
document under seal, that had not occurred. We did not approve of that procedure as a
method of avoiding the application of Rule 612, and we do not do so now.

 Rule 612 allows sealing of the portions of a document that are unrelated to the
subject matter of the testimony after an in camera inspection by the court. The record in
this case does not reflect that any such inspection occurred. The court refused to make
the document available based on the mistaken belief the State was not required to produce
the document "at this stage of the proceedings." We have found no reported cases in
which a writing used to refresh the memory of a witness has been made wholly unavailable
because it was placed under seal by the court, and we do not now approve of that method
for avoiding the application of the rule. 

 We have reviewed the document. It contains only information about the arrest, and
there is nothing contained within its pages that would in any manner justify either the trial
court's refusal to order the document turned over to defense counsel or its immediate
agreement to seal the document. 

 Error has been shown. We must now assess harm. The Texas Court of Criminal
Appeals has held that this type of error implicates the operation of the confrontation clause
and should therefore be analyzed as constitutional error. Young v. State, 830 S.W.2d 122
(Tex. Crim. App. 1992); Young v. State, 891 S.W.2d 945, 948 (Tex. Crim. App. 1994); (6)
Powell, 5 S.W.3d at 381-82. As we recognized in Powell, when evidence has been
excluded via the erroneous limitation of cross-examination, we are to apply the analysis
for assessing harm in confrontation clause cases as set out in Shelby v. State, 819 S.W.2d
544, 547 (Tex. Crim. App. 1991). 

 As we discussed in Powell, the preliminary focus of that analysis is to determine
whether the report would have been useful for impeachment purposes. We have reviewed
the document in detail and in the context of the examination of the officer at the
suppression hearing. Although the trial court erred by refusing to provide the document,
in this instance we find the document contains nothing that Larry could have used at trial
to impeach the officer or the State's case. Thus, while the trial court erred by failing to
allow counsel to inspect the report, and while the order sealing the report was also error,
those errors are in this instance harmless.

 We affirm the judgment.


 Donald R. Ross

 Justice 


Date Submitted: November 14, 2002

Date Decided: December 10, 2002


Publish

1. Three individuals with the surname of Davis are identified in this opinion. The given
names of these persons will be used to distinguish among them.
2. The controlling authority in our review of an incomplete record is Issac v. State, 989
S.W.2d 754, 757 (Tex. Crim. App. 1999).
3. The reporter is responsible for preparing and timely filing a reporter's record, and
for certifying it is a true and correct transcription of all portions of evidence and other
proceedings requested. Tex. R. App. P. 35.3(b); Uniform Format Manual for Texas
Court Reporters, § 12.1, Fig. 5, eff. May 1, 1999. Under these circumstances, the court
reporter acted properly in informing this Court her notes could not provide a complete and
correct transcription of the proceedings.
4. The record indicates that, at the time of this incident, she was married to one of
Larry's cousins, but was spending her weekends with Larry.
5. Tex. R. Evid. 612 provides in part:


 RULE 612. WRITING USED TO REFRESH MEMORY


 If a witness uses a writing to refresh memory for the purpose of
testifying either


 (1) while testifying;


 . . . or


 (3) before testifying, in criminal cases;


 an adverse party is entitled to have the writing produced at the hearing, to
inspect it, to cross-examine the witness thereon, and to introduce in evidence
those portions which relate to the testimony of the witness. If it is claimed
that the writing contains matters not related to the subject matter of the
testimony the court shall examine the writing in camera, excise any portion
not so related, and order delivery of the remainder to the party entitled
thereto. Any portion withheld over objections shall be preserved and made
available to the appellate court in the event of an appeal. If a writing is not
produced or delivered pursuant to order under this rule, the court shall make
any order justice requires, except that in criminal cases when the prosecution
elects not to comply, the order shall be one striking the testimony or, if the
court in its discretion determines that the interests of justice so require,
declaring a mistrial. 
6. In the first Young opinion, the court remanded for a harm analysis. The second
opinion contains its review of the harm analysis conducted by the appellate court.


response to the summary judgment motion. Because Lattrell produced no evidence of one element
of her claim, we will affirm the no-evidence summary judgment on that basis. See Harwell, 896
S.W.2d at 173.

Constitutional Claims

 Lattrell contends Texas Rule of Civil Procedure 166a(i) is unconstitutional as written and as
applied. She contends her rights under Article I, Sections 13, 15, and 19 (open courts, right to trial
by jury, and due process, respectively) of the Texas Constitution have been violated. See Tex.
Const. art. I, §§ 13, 15, and 19.

Open Courts Provision

 The open courts provision provides, "All courts shall be open, and every person for an injury
done to him, in his lands, goods, person or reputation, shall have remedy by due course of law." 
Tex. Const. art. I, § 13. The doctrine "is premised upon the rationale that the legislature has no
power to make a remedy by due course of law contingent upon an impossible condition." Diaz v.
Westphal, 941 S.W.2d 96, 100 (Tex. 1997) (quoting Moreno v. Sterling Drug, Inc., 787 S.W.2d 348,
351, 355 (Tex. 1990)). To establish a right to redress under the open courts provision, a party must
show (1) that he or she has a cognizable common law cause of action, and (2) that the restriction of
the claim is unreasonable or arbitrary when balanced against the statute's purpose. Id.

 Summary judgment proceedings have long been recognized in the law, and this procedure
does not deny a party to have a remedy by due course of law in open court. In Peeler v. Hughes &
Luce, 909 S.W.2d 494, 499 (Tex. 1995), the Texas Supreme Court interpreted Article I, § 13 of the
Texas Constitution to apply only to statutory restrictions of a cognizable common law cause of
action.

 Second, even if the open courts provision is applicable, the purpose of the no-evidence
summary judgment rule, which is to expeditiously dispose of unmeritorious claims, greatly
outweighs a party's interest in maintaining its claims without obtaining, after a reasonable
opportunity for discovery, even a scintilla of evidence in support of those claims. The nonmovant's
burden to raise a mere scintilla of evidence with respect to the challenged elements of its claims after
a reasonable opportunity for discovery does not constitute the type of "impossible condition" that
has been found to give rise to an open courts violation. See, e.g., DeRuy v. Garza, 995 S.W.2d 748,
752 (Tex. App.-San Antonio 1999, no pet.) (statute of limitations violated the open courts provision
by precluding a patient's claim before she learned of misdiagnosis); Glyn-Jones v.
Bridgestone/Firestone, Inc., 857 S.W.2d 640, 643-44 (Tex. App.-Dallas 1993), aff'd on other
grounds, 878 S.W.2d 132 (Tex. 1994) (statute violated open courts provision by prohibiting use of
seat belt evidence in civil trials thereby preventing redress for injuries to plaintiffs who allege that
defective seat belt systems contributed to the severity of their injuries); Hanks v. City of Port Arthur,
121 Tex. 202, 48 S.W.2d 944, 945 (Tex. 1932) (ordinance violated the open courts provision
prohibiting recovery for injuries to persons or property from defects in city property unless one of
the city commissioners had notice of the defect at least twenty-four hours before the injury).

 With respect to Lattrell's claim that Rule 166a(i) as applied to her violates the open courts
provision, we have already stated that Lattrell did not diligently pursue discovery in over two years
to bring forward evidence raising a fact issue regarding her design defect claim. She contends in her
summary judgment reply that she was focused on "getting genuine information and moving on to
trial," and that Chrysler hindered her efforts to depose company representatives and engaged in
"hyper-technical nit-picking." The record simply does not bear out her claim. To the contrary, the
record shows that Lattrell failed to cooperate in the discovery process altogether and that she only
noticed her first deposition as an attachment to her response to the summary judgment motion. 
Under such circumstances, we cannot say the application of Rule 166a(i) violated the open courts
provision.

Right to a Trial by Jury

 The Texas Constitution provides, "The right of trial by jury shall remain inviolate." Tex.
Const. art. I, § 15. Lattrell contends Rule 166a(i) requires her to try her case "by affidavit" instead
of before a jury, in contravention of the constitutional right embodied in Section 15. The right to a
jury trial in civil cases is not absolute, but rather is regulated by rules specifying its availability. 
Green v. W. E. Grace Mfg. Co., 422 S.W.2d 723, 725 (Tex. 1968). The purpose of the summary
judgment rule is not to provide trial by affidavit, but rather to provide a method of summarily
terminating a case when it clearly appears that only questions of law are involved and that there are
no genuine issues of fact. Port Distrib. Corp. v. Fritz Chem. Co., 775 S.W.2d 669, 670 (Tex.
App.-Dallas 1989, writ dism'd by agr.). The rule does not deprive litigants of a jury trial where
there exists a material question of fact. When a party cannot show a material fact issue, there is
nothing to submit to a jury, and the grant of summary judgment to the opposing party does not
violate the constitutional right to a jury trial. Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.,
747 S.W.2d 464, 469 (Tex. App.-San Antonio 1988, no writ); Carrabba v. Employers Cas. Co., 742
S.W.2d 709, 717 (Tex. App.-Houston [14th Dist.] 1987, no writ); Mills v. Rice, 441 S.W.2d 290,
292 (Tex. Civ. App.-El Paso 1969, no writ); see also 68 Tex. Jur. 3rd Summary Judgment § 3
(1989) (summary judgment procedure does not infringe right to trial by jury).

Due Process

 Finally, we turn to Lattrell's contention that Rule 166a(i) violates her rights under the due 
process provision of the Texas Constitution. That provision provides that no citizen "shall be
deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except
by the due course of the law of the land." Tex. Const. art. 1, § 19. The summary judgment rule has
been in effect since 1950, and our courts have long upheld its validity under the due process clause. 
Parker v. Dallas Hunting and Fishing Club, 463 S.W.2d 496, 501 (Tex. Civ. App.-Dallas 1971, no
writ); Mills, 441 S.W.2d at 291 (citing Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952));
see also 68 Tex. Jur. 3rd Summary Judgment § 3 (1989) (summary judgment rule does not deprive
resisting party of due process of law).

 Lattrell does not explain whether she believes Rule 166a(i) as applied denied her procedural
or substantive due process. She does not contend she was denied notice or an opportunity to be
heard. Nor does she identify a protected property or liberty interest of which she is deprived. Her
entire due process argument consists of two short paragraphs, the bulk of which is a lengthy quote
from Clem v. Evans, 291 S.W. 871 (Tex. Comm'n App. 1927, holding approved), for the proposition
that the Legislature is prohibited from enacting a law that deprives a person of property, in violation
of procedural due process, by creating a presumption that a promise not performed within a
reasonable time was falsely and fraudulently made, where the presumption is rebuttable only by
proof of certain specifically enumerated reasons. Clem is not in point with this case.

 Lattrell then states:

 In a similar vein, subsection (i) unconstitutionally shifts the complete burden in
summary judgment proceedings to the plaintiff, thus effectively depriving the
plaintiff of a fair and reasonable opportunity (by making him engage in a full trial by
affidavit on the liability issue) to rebut the unfair and overly burdensome
presumption against his case.


 As discussed above, the summary judgment rule does not require a plaintiff to engage in a
full trial by affidavit. Lattrell was not required to marshal her evidence in answer to the summary
judgment motion; she was simply required to show the existence of some evidence on each element
of her claim. Drew v. Harrison County Hosp. Ass'n, 20 S.W.3d 244, 247 (Tex. App.-Texarkana
2000, no pet.). 

 Furthermore, her suggestion that subsection (i) imposes an unfair and overly burdensome
presumption against her case is without merit. There is no presumption against Lattrell's case. 
Indeed, application of the rule requires that the evidence be viewed in the light most favorable to her,
disregarding all contrary evidence and inferences, because she is the nonmovant. The rule as applied
did not serve to violate Lattrell's due process rights. We hold that Rule 166a(i) does not violate the
open courts, trial by jury, or due process provisions of the Texas Constitution.

 The judgment is affirmed.






 Ben Z. Grant

 Justice


Date Submitted: October 18, 2001

Date Decided: May 21, 2002


Publish
1. In her original petition, the plaintiff's name is spelled "Lattrell" and "Littrell." Because the
trial court's Order Granting Defendants' Motion for Summary Judgment refers to Tabitha Lattrell,
we refer to the appellant as Lattrell.
2. While the renewed motion for summary judgment was pending, Chrysler moved to sanction
Lattrell for failing to produce her experts for deposition. Lattrell never filed a response to the Motion
for Sanctions.
3. Lead counsel, Benton Musselwhite, was not present at the summary judgment hearing. At
Musselwhite's request, Lattrell was represented at the hearing by David Line, an attorney not
associated with Musselwhite's firm.
4. Tex. R. Civ. P. 1 states 

 The proper objective of rules of civil procedure is to obtain a just, fair,
equitable and impartial adjudication of the rights of litigants under established
principles of substantive law. To the end that this objective may be attained with as
great expedition and dispatch and at the least expense both to the litigants and to the
state as may be practicable, these rules shall be given a liberal construction.