TEXAS DEPARTMENT OF PUBLIC
SAFETY, Appellant,

v.

Luis CUELLAR, Appellee.

No. 04–00–00756–CV.

Court of Appeals of Texas,
San Antonio.

July 5, 2001.

782

Andres Cedillos, Assistant Director of Hearings, Supervising Attorney, ALR Appeals, Terri Kay Oliver, Attorney, ALR Appeals, Texas Department of Public Safety, Austin, for Appellant.

Grady L. Roberts, Jr., Law office of Grady L. Roberts, Jr., Pearsall, for Appellee.

Sitting: HARDBERGER, C.J., and STONE and GREEN, JJ.

PHIL HARDBERGER, Chief Justice.

This is an appeal of a trial court judgment reinstating the appellant, Luis Cuellar's ("Cuellar's"), driver's license. Cuellar was arrested for driving while intoxicated ("DWI") and consequently asked to give a breath sample into an intoxilyzer. Cuellar failed to successfully complete the examination, and had his driver's license suspended per the implied consent statute contained in the Texas Transportation Code. An administrative hearing was held contesting the suspension, wherein the Administrative Law Judge ("ALJ") sustained the Texas Department of Public Safety's ("TDPS's") actions. Cuellar appealed the administrative order to the trial court, which reversed the order and reinstated Cuellar's driver's license.

PROCEDURAL HISTORY AND FACTS

On January 2, 2000, Texas Highway Patrol Troopers Lucian Ebrom ("Ebrom") and Gumecindo Garcia observed Cuellar driving on the wrong side of the road in a car with a broken license plate light. During a subsequent investigatory stop, Cuellar displayed numerous signs of intoxication, principally the strong odor of alcohol on his breath, and failure of the standardized Field Sobriety Tests ("FSTs"). He was arrested on suspicion of driving while intoxicated ("DWI") and read his Miranda rights. Ebrom also read Cuellar the statutory warnings associated with administering an intoxilyzer test to measure blood alcohol levels. When Trooper Garcia began his preparations, Cuellar "developed hiccups" according to the troopers. It is TDPS's position, supported by their testimony, that Cuellar did not really have the hiccups and, only pretended to in order to defeat a successful testing. Ebrom testified that Cuellar had not shown any signs of hiccups before the test and the hiccups did not continue after the test. The hiccups began, and ended, according to Ebrom, only when Cuellar was asked to blow into the intoxilyzer. The hiccups, real or feigned, prevented Cuellar from providing a sufficiently testable breath sample. He was given the test twice, and both times the hiccups resulted in unusable breath samples due to his inability to force a steady stream of air into the instrument. Cuellar testified that he really did have the hiccups and he had no control over them.

An administrative hearing was held contesting the suspension, wherein the ALJ sustained TDPS's actions. At the hearing, Ebrom testified that he believed Cuellar's hiccups were an act. According to Ebrom, Cuellar would "kind of jump and then make the sound." This unusual timing, coupled with the fact that Cuellar only seemed to suffer from these hiccups when specifically attempting the intoxilyzer test, aroused Ebrom's suspicions. After two attempts, the officers deemed Cuellar to have refused to give a breath sample and suspended his license. Cuellar testified that he had been suffering from hiccups off and on all day as a result of a mild case of food poisoning. Christopher Garcia ("Garcia"), a friend who was the passenger in Cuellar's car the night of the arrest, testified that Cuellar had complained of stomach pains earlier, and experienced recurring bouts of hiccups throughout the evening. The ALJ, as is common, was faced with conflicting evidence. As the administrative judge it was her job, however, to decide the credibility of the witnesses.

The ALJ made several findings of fact and conclusions of law based upon the testimony and exhibits introduced at the hearing. Among these were: (1) Cuellar was properly asked to submit a breath specimen per TDPS's statutory warning form; (2) after being requested to submit a specimen, Cuellar refused; (3) Cuellar's license was subject to suspension for 90 days as provided by the Texas Transportation Code.

On appeal to the district court, the administrative order was reversed without explanation.

## STANDARD OF REVIEW

When appealing an administrative order to a trial court, the trial court is required to examine the ALJ's order to determine whether it is "reasonably supported by substantial evidence considering ... the record as a whole." TEX.GOV'T CODE ANN. § 2001.174 (Vernon 2000). The reviewing court may not substitute its judgment for that of the agency, as the ALJ is deemed the ultimate trier of fact. *Id.;* 1 TEX.ADMIN.CODE § 159.37(a) (West 2000). *See also R.R. Comm'n of Tex. v. Graford Oil Corp.,* 557 S.W.2d 946, 951–52 (Tex.1977); *Tex. Dep't of Pub. Safety v. Valdez,* 956 S.W.2d 767, 769 (Tex.App.—San Antonio 1997, no pet.). The trial court is bound by the administrative record when determining whether substantial evidence exists to support the ALJ's order. 1 TEX.ADMIN.CODE § 159.37 (West 2000); *Valdez,* 956 S.W.2d at 769.

The existence of substantial evidence turns on the question of reasonableness. Even if the evidence presented supporting the ALJ's order amounts to only slightly more than a scintilla, the trial court must affirm the ALJ's order if the findings are reasonable. *Mireles v. Tex. Dep't of Pub. Safety,* 9 S.W.3d 128, 131 (Tex.1999); *R.R. Comm'n of Tex. v. Torch Operating Co.,* 912 S.W.2d 790, 792–93 (Tex.1995). The trial court has no discretion when reviewing an administrative decision to determine what the law actually is, or in applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *Valdez,* 956 S.W.2d at 769. Any evidentiary ambiguities should be resolved in favor of the administrative order with a finding of substantial evidence to support the ALJ's decision. *Torch Operating Co.,* 912 S.W.2d at 792; *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex.1984).

This court's review of the trial court's determination is undertaken *de novo. State v. Heal,* 917 S.W.2d 6, 9 (Tex. 1996); *Tex. Dep't of Pub. Safety v. Fecci,* 989 S.W.2d 135, 139 (Tex.App.—San Anto-

nio 1999, pet. denied). We review questions of law without affording any deference to the trial court's finding. *Heal,* 917 S.W.2d at 9.

### DISCUSSION

 The Texas Transportation Code defines refusal of a request to submit a specimen of breath or blood as either an express refusal or as "the result of an intentional failure." TEX.TRANSP.CODE ANN. § 724.061 (Vernon 1999). While we acknowledge there was evidence to support both parties, we believe the ALJ had sufficient evidence before her to find that Cuellar was faking the hiccups in order to foil the intoxilyzer test.

Ebrom's testimony and documentary evidence was introduced for the purpose of proving Cuellar's hiccups were faked. If the ALJ discounted Cuellar's own testimony about suffering from a mild case of food poisoning and the testimony of Cuellar's friend, there is sufficient evidence to meet the substantial evidence test. Conflicts in the evidence regarding a defendant's response to an officer's request for a breath or blood specimen are matters for the ALJ to decide. *Ott v. Tex. Dep't of Pub. Safety,* 958 S.W.2d 294, 296 (Tex.App.—Austin 1998, no pet.). The trial court cannot impose its own judgment regarding witness credibility, nor can this court. The ALJ's determinations are dispositive in this case.

We find that the trial court improperly reversed the administrative order. There is enough evidence to meet the reasonableness standard of the substantial evidence test. Because the ALJ found that Cuellar had been properly advised of his rights and the consequences of refusing the breath test, and found that Cuellar had refused to give a breath sample, the question of law was decided properly when Cuellar's license was suspended.

### CONCLUSION

We reverse the trial court's decision, and affirm the administrative order suspending Cuellar's driver's license.