

# NUMBER 13-10-00330-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

TEXAS DEPARTMENT OF PUBLIC SAFETY,                    Appellant,

v.

OMAR GARZA,                                          Appellee.

## On appeal from the County Court at Law No. 4
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Vela
Memorandum Opinion by Chief Justice Valdez**

The Texas Department of Public Safety (the "Department") appeals from a judgment directing it to rescind the suspension of appellee's, Omar Garza, driver's license. By two issues, the Department argues that the county court erred in finding there was not substantial evidence to support the administrative law judge's ("ALJ")

decision to suspend Garza's driver's license. We reverse and reinstate the ALJ's decision.

## I. BACKGROUND[1]

At about 2:00 a.m. on January 3, 2009, Juan Pedraza, a deputy with the Hidalgo County Sheriff's Office, observed a gray Ford F-150 pickup truck, driven by Garza, make a wide right turn into the lane designated for oncoming traffic while turning onto Oxford Road from Depot Road in Hidalgo County, Texas. *See* TEX. TRANSP. CODE ANN. §§ 545.051(a), 545.101(a) (Vernon 1999). In his offense report, Deputy Pedraza noted that the right turn was so wide that it "caused the front driver['s] side tire to go onto the grassy area (south side of Depot Road) [the left-hand shoulder of Oxford Road]." Upon observing Garza's wide right turn, Deputy Pedraza motioned for Garza to pull over; Garza complied.

Once Garza pulled over, Deputy Pedraza asked Garza a few questions and noticed "a strong odor of an alcoholic beverage emitting from [Garza's] breath and/or person." Deputy Pedraza asked Garza if he had been drinking, and Garza admitted to drinking four or five twelve-ounce beers. Garza was then asked to step out of the vehicle and perform several field sobriety tests—the Horizontal Gaze Nystagmus, the Walk-and-Turn Exam, and the One-Leg-Stand Exam.[2] Deputy Pedraza testified that Garza performed poorly on the field sobriety tests; based on his admission of drinking four or five beers and his poor performance on the field sobriety tests, Garza was arrested for driving while intoxicated, a class B misdemeanor. *See* TEX. PENAL CODE

---

[1] Garza has not filed an appellee's brief in this matter.

[2] Deputy Pedraza's offense report, admitted into evidence without objection, indicates that a Portable Breath Test was administered, and Garza's blood-alcohol concentration was .208; thus, Deputy Pedraza concluded that Garza was "intoxicated due to . . . alcohol."

ANN. § 49.04(a)-(b) (Vernon 2003). Deputy Pedraza provided statutory warnings to Garza and asked him to provide a sample of his breath for specimen testing. Garza refused to comply. Garza was subsequently taken to the Hidalgo County Jail and processed. While at the jail, Garza's driver's license was confiscated and mailed to the Department.

Thereafter, Garza requested an administrative hearing on the matter. The ALJ conducted a hearing in this matter on October 22, 2009. At the conclusion of the hearing, the ALJ issued findings of fact and conclusions of law, wherein she noted that Deputy Pedraza had reasonable suspicion to stop Garza because of Garza's wide right turn into the oncoming traffic lane and onto the grass on the shoulder of Oxford Road, a public roadway, while operating a motor vehicle. The ALJ also noted in her findings of fact that Garza smelled of alcohol, admitted to drinking four or five beers, performed poorly on the administered field sobriety tests, and had alcohol in his system, as indicated by the Portable Breath Test administered. The ALJ concluded that the Department had satisfied its burden of proving that Garza's driver's license should be suspended and, therefore, ordered Garza's driver's license suspended for 180 days.

In November 2009, Garza filed an appeal of the ALJ's decision in the County Court at Law No. 4 in Hidalgo County. The county court conducted a hearing on Garza's appeal on February 22, 2010. At the hearing, Garza repeatedly referenced a video that was not introduced into evidence at the administrative hearing, claiming that the video contained evidence favorable to his case. The video was not offered or admitted at the February 22, 2010 hearing, but it was discovered that the alleged video

3

was from the video camera affixed to Deputy Pedraza's patrol car.[3]  On May 17, 2010, the county court signed an order:  (1) reversing the ALJ's decision on the grounds that there was no reasonable suspicion to stop Garza's vehicle; (2) reinstating Garza's driver's license; and (3) documenting its own findings of fact in this matter.  The Department timely filed notice of its intent to appeal the county court's May 17, 2010 decision.

## II. STANDARD OF REVIEW

Appeals pertaining to an administrative suspension of a driver's license are reviewed under the substantial evidence standard.  *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999); *Tex. Dep't of Pub. Safety v. Hutcheson*, 235 S.W.3d 312, 314 (Tex. App.–Corpus Christi 2007, pet. denied); *see* TEX. TRANSP. CODE ANN. § 524.041 (Vernon 2007); TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2008).  In the application of this standard, the court may not substitute its judgment for that of the ALJ.  *Mireles*, 9 S.W.3d at 131.  Thus, the issue for the reviewing court is not whether the ALJ's order was correct, but whether the record reflects a reasonable basis for the ALJ's order.  *Id.*  We "must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them."  *Id.* (citing *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792-93 (Tex. 1995)).

However, a reviewing court:

shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

---

[3] Deputy Pedraza testified that no such video exists because the video camera affixed to his patrol car began malfunctioning the night before Garza was stopped, and it was not fixed prior to his stop of Garza.  Therefore, there was no recording made of the traffic stop.

4

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T. CODE ANN. § 2001.174(2). Thus, "[t]o reverse an agency decision, the reviewing court must conclude (1) that the agency's decision was erroneous for one of the reasons enumerated in subsections (A) through (F), and (2) that substantial rights of the appellant have thereby been prejudiced." *Tex. Dep't of Pub. Safety v. Jennings*, 1 S.W.3d 348, 351 (Tex. App.–Corpus Christi 1999, no pet.).

### III. APPLICABLE LAW

To uphold a license suspension based on an allegation of driving while intoxicated, an ALJ must find that the Department proved the following issues by a preponderance of the evidence: (1) whether reasonable suspicion to stop or probable cause to arrest the driver existed; and (2) whether the driver was operating a motor vehicle in a public place and had an alcohol concentration of a level specified by section 49.01(2)(B) of the penal code. *See* TEX. TRANSP. CODE ANN. § 524.035(a)(1), (2) (Vernon Supp. 2010); *see also Jennings*, 1 S.W.3d at 352. "If the administrative law judge finds in the affirmative on each issue . . . the suspension is sustained." TEX. TRANSP. CODE ANN. § 524.035(b); *see also Jennings*, 1 S.W.3d at 352.

### IV. ANALYSIS

5

In both of the Department's issues on appeal, it argues that the county court erred in ruling that there was not substantial evidence to support the ALJ's decision to suspend Garza's driver's license. Specifically, the Department asserts that Deputy Pedraza had reasonable suspicion to stop Garza because Garza committed a traffic violation. The Department further asserts that the evidence demonstrates that Garza was intoxicated at the time of the stop, and thus, a suspension of Garza's license was warranted. Though Garza has not filed an appellee's brief in this matter, he argued in the county court that: (1) the ALJ's findings, inferences, and decisions are not reasonably supported by substantial evidence and are arbitrary and capricious because the Department failed to provide the ALJ with a copy of the video tape from Deputy Pedraza's video camera affixed to his patrol car; and (2) he must operate a motor vehicle "to either reach his place of employment, the educational facility which he is attending, or in the performance of his essential household duties."

**A. The Video Tape**

We first address Garza's contention that the ALJ's decision is arbitrary and capricious because the Department failed to provide a copy of the video tape from Deputy Pedraza's patrol car. A copy of the transcript from the administrative hearing is included in the record. At no point during the administrative hearing did Garza object to the Department's alleged failure to provide a copy of the video tape. *See* TEX. R. APP. P. 33.1; *see also Tex. Dep't of Pub. Safety v. Doyle*, 987 S.W.2d 897, 900 (Tex. App.– Fort Worth 1998, no pet.) (noting that "[a] party who fails to get a pretrial ruling on discovery disputes that exist before trial waives any claim for sanctions based on that conduct") (citing *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993)).

6

Moreover, when asked whether there was a video tape of the traffic stop, Deputy Pedraza responded, "No sir, there isn't. . . . The digital recording was new to our—to our department and that unit—the digital recording stopped working the night before." *See* 1 TEX. ADMIN. CODE ANN. § 159.151 (Vernon 2009) (outlining the scope of pre-hearing discovery for administrative license suspension hearings); *see also Blankenbeker v. Tex. Dep't of Pub. Safety*, 990 S.W.2d 813, 815 (Tex. App.–Austin 1999, pet. denied) (stating that the ALJ must deny a request for documents that are not in the Department's possession). Because Garza waived his complaint pertaining to the video and because the record contains evidence demonstrating that the video recording of the traffic stop did not exist, we reject Garza's argument pertaining to the video tape.

## B. Whether the ALJ's Judgment is Supported by Substantial Evidence

### 1. Was There Reasonable Suspicion for the Traffic Stop?

"When a law enforcement office stops someone on a public road, it is only necessary that he reasonably believes that a violation was in progress." *Hesskew v. Tex. Dep't of Pub. Safety*, 144 S.W.3d 189, 191 (Tex. App.–Tyler 2004, no pet.) (citing *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.–Texarkana 1999, pet. ref'd)). The Department is "not required to show that a traffic offense actually was committed." *Tex. Dep't of Pub. Safety v. Nielsen*, 102 S.W.3d 313, 317 (Tex. App.–Beaumont 2003, no pet.) (citing *Powell*, 5 S.W.3d at 376-77). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex.

Crim. App. 2005); *see Powell*, 5 S.W.3d at 376. "A reasonable-suspicion determination is made by considering the totality of the circumstances." *Ford*, 158 S.W.3d at 492-93.

As to whether there was reasonable suspicion to stop Garza, Deputy Pedraza testified that he observed Garza make a wide right turn into the lane designated for oncoming traffic while turning onto Oxford Road from Depot Road. Deputy Pedraza further testified that the right turn was so wide that it "caused the front driver['s] side tire to go onto the grassy area (south side of Depot Road) [the left-hand shoulder of Oxford Road]." Section 545.101(a) of the transportation code provides that when making a right turn at an intersection, "an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway." TEX. TRANSP. CODE ANN. § 545.101. Further, motorists on a roadway must drive on the right-hand side of the road, unless: (1) "the operator is passing another vehicle"; (2) "an obstruction necessitates moving the vehicle left of the center of the roadway"; (3) "the operator is on a roadway divided into three marked lanes for traffic"; or (4) "the operator is on a roadway restricted to one-way traffic." *Id.* § 545.051(a) (Vernon 1999). At the administrative hearing, Garza alleged that he made the wide right turn because Deputy Pedraza's patrol car was parked near the Oxford Road and Depot Road intersection. Garza asserted that it was hazardous to turn right onto Oxford Road "as closely as practicable to the right-hand curb or edge of the roadway." *See id.* Deputy Pedraza testified at the administrative hearing that his patrol car was four to five car lengths from the intersection and was situated off of the roadway; therefore, there was no need for Garza to make such a wide right turn.[4] Garza later testified that he took the wide right

---

[4] Deputy Pedraza stated that he observed Garza's traffic violation while walking back to his patrol car after making a traffic stop of another motorist.

turn to avoid hitting Deputy Pedraza because Deputy Pedraza's patrol car was parked near the intersection. Garza also noted that the lighting at the intersection was not good; that the road does not have a center stripe designating specific lanes for traffic; and that there was no traffic in the oncoming lane when he made the right turn onto Oxford Road.

We note that it was within the province of the ALJ to determine the credibility and weight accorded to the witnesses' testimony. *See Tex. Dep't of Pub. Safety v. Sanchez*, 82 S.W.3d 506, 511 (Tex. App.–San Antonio 2002, no pet.) (citing *Tex. Dep't of Pub. Safety v. Cuellar*, 58 S.W.3d 781, 783 (Tex. App.–San Antonio 2001, no pet.); *Ott v. Tex. Dep't of Pub. Safety*, 958 S.W.2d 294, 296 (Tex. App.–Austin 1998, no pet.)); *see also Tex. Dep't of Pub. Safety v. Celedon*, No. 13-01-557-CV, 2002 Tex. App. LEXIS 6409, at *10 (Tex. App.–Corpus Christi Aug. 29, 2002, no pet.) (mem. op., not designated for publication) ("[I]n the face of conflicting evidence, it is the ALJ's job to decide the credibility of the evidence. . . . The county court cannot substitute its judgment for that of the ALJ."). Apparently, the ALJ believed Deputy Pedraza's justification for the traffic stop and rejected Garza's excuse for making the wide right turn.

In looking at the evidence in the light most favorable to the ALJ's findings, there is more than a scintilla of evidence to support the ALJ's determination that Deputy Pedraza had reasonable suspicion that Garza committed a traffic violation when making the wide right turn onto Oxford Road. *See Ford*, 158 S.W.3d at 492-93; *Mireles*, 9 S.W.3d at 131; *Bracken v. State*, 282 S.W.3d 94, 98 (Tex. App.–Fort Worth 2009, pet. ref'd) (concluding that the trial court did not err in denying appellant's motion to

suppress because the officer had reasonable suspicion to stop appellant when the officer observed appellant cross the center line of a "two-lane, two-way roadway by half a vehicle's width; in other words, [a]ppellant failed to drive on the right . . ."); *Cuellar*, 58 S.W.3d at 783; *Powell*, 5 S.W.3d at 376; *see also State v. Evans*, No. 06-09-00216-CR, 2010 Tex. App. LEXIS 2387, at **9-12 (Tex. App.–Texarkana Apr. 2, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding that an officer had reasonable suspicion to stop a motorist driving left of center of the roadway for an eighth to a quarter of a mile and noting that it did not matter that the road did not have a center stripe; "[s]ection 545.051 of the Texas Transportation Code does not limit the requirement of driving in the right lane to only roadways marked with a center stripe"); *Powers v. State*, No. 14-03-00442-CR, 2004 Tex. App. LEXIS 2386, at **3-4 (Tex. App.–Houston [14th Dist.] Mar. 16, 2004, no pet.) (mem. op., not designated for publication) (affirming a trial court's denial of a motion to suppress evidence obtained from a traffic stop, whereby defendant challenged the legality of a stop by an officer who observed defendant make a right-hand turn into the lane of oncoming traffic); *Celedon*, 2002 Tex. App. LEXIS 6409, at *10 ("[I]f an officer has a reasonable basis for suspecting a person has committed an offense, the officer may legally initiate the traffic stop.").

### 2. Was There Probable Cause for the Arrest?

As to whether there was probable cause for Garza's arrest, Deputy Pedraza noticed several signs of intoxication. First, Deputy Pedraza described an alcoholic odor emanating from Garza's breath. Second, Garza admitted to drinking four or five twelve-ounce beers earlier that evening. Third, Garza performed poorly on the administered

field-sobriety tests. Fourth, Deputy Pedraza's offense report reflects that a Portable Breath Test was administered to Garza, and the test revealed that Garza's blood-alcohol concentration at the time of arrest was .208, which is significantly greater than the allowable blood-alcohol concentration level—.08. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (Vernon 2003). Based on the totality of the circumstances, there is substantial evidence of probable cause for Garza's arrest. *See* TEX. TRANSP. CODE ANN. § 524.035(a)(1), (b); *see also Nielsen*, 102 S.W.3d at 317 (citing *State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.–Austin 2000, no pet.); *Jennings*, 1 S.W.3d at 352.

Based on the foregoing, there is more than sufficient evidence to support the ALJ's determinations of reasonable suspicion and probable cause. *See Mireles*, 9 S.W.3d at 131; *Hutcheson*, 235 S.W.3d at 314; *see also* TEX. TRANSP. CODE ANN. § 524.041; TEX. GOV'T CODE ANN. § 2001.174. Thus, we conclude that the county court erred in substituting its judgment for that of the ALJ. *See Mireles*, 9 S.W.3d at 131. Accordingly, we sustain the Department's issues on appeal.

## V. CONCLUSION

Having sustained the Department's issues on appeal, we reverse the county court's order and render judgment reinstating the ALJ's order authorizing the suspension of Garza's driver's license.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
2nd day of December, 2010.

11