

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00086-CV

_____

TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant

V.

RICHARD DIAZ, Appellee

On Appeal from the County Criminal Court at Law No. 13
Harris County, Texas
Trial Court No. 2340700Y

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

The Texas Department of Public Safety appeals a judgment from the County Criminal Court at Law No. 13 of Harris County[1] reversing an administrative law judge's (ALJ's) order[2] that suspended Richard Diaz's driver's license because he refused to give a blood sample to determine if he was intoxicated. The Department contends that the trial court (1) abused its discretion by denying its oral motion for continuance[3] and (2) erred in finding that the administrative record did not contain more than a scintilla of evidence supporting the ALJ's order. Because we agree that the administrative record supports the ALJ's order, we reverse the trial court's judgment and reinstate the ALJ's order suspending Diaz's driver's license.

## I. Background

At 2:30 on the morning of January 9, 2021, Harris County deputy Seth Frydberg instituted a traffic stop of Diaz's black Toyota Tundra on West Hardy Frontage Road in Houston for traveling sixty miles per hour in a forty-mile-per-hour zone. That stop ultimately resulted in Diaz's arrest for driving while intoxicated (DWI) less than twenty minutes later. After the arrest, Frydberg requested Diaz to allow the taking of a blood specimen, which Diaz refused. Frydberg then confiscated Diaz's driver's license and served him with a temporary driving permit and

---

[1]Originally appealed to the Fourteenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Fourteenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Although the ALJ's order is not included in the record, the substance of the order suspending Diaz's driver's license is undisputed.

[3]Although the Department entitled this issue as, "Did the trial court abuse its discretion when it overruled the Department's objection to the admission of an administrative record known to the trial court, Diaz, and the Department to be incomplete[]," the substance of its argument was that the trial court abused its discretion in denying its oral motion for a continuance.

notice that his driver's license would be suspended because of his refusal to provide the blood specimen.

Diaz requested an administrative hearing to contest the suspension. On June 9, 2021, an administrative hearing was heard by the ALJ. At the hearing, the Department offered into evidence copies of Frydberg's Peace Officer's Sworn Report, the statutory warning issued to Diaz,[4] the Notice of Suspension/Temporary Driving Permit issued to Diaz, and part of the incident/investigation report[5] regarding the incident.

In the sworn report, Frydberg declared[6] that the reasonable suspicion for the traffic stop was that he observed the vehicle "SPEEDING 60 MPH IN 40 MPH ZONE" and that Diaz was identified as the driver. Under "Probable cause of arrest or detention," Frydberg declared that the "[s]igns of intoxication or consumption of alcohol" were "GLASSY, DROOPY EYES, SLURRED SPEECH," that he was not certified to administer standardized field sobriety tests (SFSTs), and that "SFST WAS ADMINISTERED BY SFST CERTIFIED DEPUTY. CLUES

---

[4]The statutory warning advises a person under arrest for DWI, *inter alia*, that, if he refuses to give a breath or blood specimen when asked, his driver's license will be suspended for not less than 180 days.

[5]The administrative record forwarded to the trial court by the State Office of Administrative Hearings (SOAH) contained only one page of the incident report. *See* 1 TEX. ADMIN. CODE § 159.255(b) (Westlaw, Westlaw current through Apr. 15, 2022) (eff. Apr. 22, 2022) (State Office of Admin. Hearings, Appeal of Judge's Decision) (providing that, on an appeal from a suspension order, the SOAH "shall promptly furnish the reviewing court and both parties a certified copy of the record"). In its oral motion for continuance, the Department contended that the incident report admitted into evidence at the administrative hearing contained eight pages and tendered its exhibit R-1 as an offer of proof of the contents of the incident report. However, exhibit R-1 contains a total of eighteen pages, and the Department never identified the eight pages in exhibit R-1 that it contended were contained in the copy of the incident report that was admitted as an exhibit in the administrative pleading. Further, the transcript of the administrative hearing showed that, although the exhibit containing the incident report was discussed, there was no discussion regarding how many pages it contained.

[6]Frydberg executed the sworn report under a declaration under penalty of perjury that it was true and correct. An officer's sworn report is admissible as a public record in an administrative license suspension hearing. *See* 1 TEX. ADMIN. CODE § 159.211(c)(2) (Westlaw, Westlaw current through Apr. 15, 2022) (eff. Apr. 22, 2022) (State Office of Admin. Hearings, Hearings).

WERE: HGN[7]- 6 CLUES, RHOMBER- 16 SECONDS, ONE LEG STAND- 2 CLUES." The statutory warning and notice of suspension showed that Diaz had been arrested, that he had been asked to give a specimen of his blood, and that he had refused to allow the taking of a specimen of his blood.

The parties agree that the ALJ entered an order suspending Diaz's driver's license. Diaz appealed the ALJ's order to the county criminal court at law. After reviewing the administrative record and hearing the arguments of counsel, the trial court found that there was not a scintilla of evidence to provide a reasonable suspicion to detain Diaz for the purpose of conducting a DWI investigation and reversed and vacated the ALJ's order.

## II. Standard of Review

"When reviewing an ALJ's suspension of driving privileges, courts must use a substantial evidence standard of review." *Tex. Dep't of Pub. Safety v. Butler*, 110 S.W.3d 673, 675 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam); *Tex. Dep't of Pub. Safety v. Jackson*, 76 S.W.3d 103, 106 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). "Under this standard, the reviewing court cannot replace the ALJ's judgment with its own." *Id.* (citing *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995); *Jackson*, 76 S.W.3d at 106). "If the ALJ's decision is supported by more than a mere scintilla of evidence, that decision must be upheld." *Id.* (citing *Torch Operating Co.*, 912 S.W.2d at 792–93). "When reviewing the record from the administrative agency, the existence of more than a mere scintilla of evidence turns on the

---

[7]Horizontal Gaze Nystagmus test. *See Emerson v. State*, 880 S.W.2d 759, 761 (Tex. Crim. App. 1994).

4

question of the reasonableness of the ALJ's decision, not the correctness of that decision." *Id.* (citing *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994)). "The conclusions of the ALJ are presumed valid." *Id.* (citing *City of El Paso*, 883 S.W.2d at 185). "Whether the ALJ's decision is supported by more than a mere scintilla of evidence is a question of law." *Id.* (citing *Firemen's and Policemen's Civ. Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984); *Jackson*, 76 S.W.3d at 106). "Accordingly, we review the trial court's judgment under a substantial evidence standard of review de novo." *Id.* (citing *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Jackson*, 76 S.W.3d at 106).

The Texas Transportation Code requires the Department to suspend a person's driver's license if that person has been arrested and refuses to submit to the taking of a specimen of his breath or blood at the request of a peace officer who has reasonable grounds to believe the person was operating a motor vehicle in a public place while intoxicated. TEX. TRANSP. CODE ANN. § 724.012(a)(1) (Supp.), § 724.035(a)(1). If the person requests a hearing within fifteen days after he receives a notice of suspension of his license, the SOAH is required to hold a hearing. TEX. TRANSP. CODE ANN. § 724.041(a). As applicable to this case, to prevail at the administrative hearing, the Department must show by a preponderance of the evidence that

(1) reasonable suspicion or probable cause existed to stop or arrest the person;

(2) probable cause existed to believe that the person was:

(A) operating a motor vehicle in a public place while intoxicated;

. . . .

5

(3)     the person was placed under arrest by the officer and was requested to submit to the taking of a specimen; and

(4)     the person refused to submit to the taking of a specimen on request of the officer.

TEX. TRANSP. CODE ANN. § 724.042; *Butler*, 110 S.W.3d at 675. In this appeal, it is undisputed that there was sufficient evidence that Frydberg had reasonable suspicion to stop Diaz for speeding, that Diaz was arrested and was requested to submit to the taking of a specimen of his blood, and that Diaz refused to submit to the taking of a specimen.

III.    **Substantial Evidence Supported the Trial Court's Finding that Probable Cause Existed to Believe Diaz Was Operating a Motor Vehicle While Intoxicated**

A.      **Reasonable Suspicion Existed to Extend the Investigative Stop**

In its second issue, the Department contends that the trial court erred in finding that the administrative record did not contain more than a scintilla of evidence supporting the ALJ's order. It argues that the sworn report provided substantial evidence to support the ALJ's finding that Diaz was driving his vehicle while intoxicated. The Department points to Frydberg's description of Diaz as having glassy, droopy eyes and slurred speech and to his declaration that an officer certified to administer SFSTs obtained six out of six clues on the HGN test and two of four clues on the one-leg stand.

Diaz argues first that there was not substantial evidence to support the ALJ's finding that reasonable suspicion justified Frydberg's extension of the traffic stop beyond a speeding investigation. He argues that droopy, glassy eyes and slurred speech are not enough to provide reasonable suspicion of intoxication to justify extending the traffic stop detention in order to conduct a DWI investigation. He reasons that those conditions can be caused by a number of

6

innocent factors, such as fatigue, diabetes, unnamed medical conditions, and smoke. In addition, he points out that there is no evidence that Frydberg smelled alcohol or any evidence linking the observed conditions to another intoxicant. Since there was no reasonable suspicion to extend the stop, Diaz reasons, the officers violated his Fourth Amendment protection by extending the detention and subjecting him to SFSTs, and the ALJ erred in considering the evidence obtained in those tests. We address this argument first.

"Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). "It also looks to the totality of the circumstances." *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "[T]hose circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Id.* (citing *Reid v. Georgia*, 448 U.S. 438, 441 (1980) (per curiam)).

Consequently, "reasonable suspicion can exist even if the conduct is 'as consistent with innocent activity as with criminal activity.'" *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011) (quoting *Curtis v. State*, 238 S.W.3d 376, 378–79 (Tex. Crim. App. 2007)). "The possibility of an innocent explanation does not deprive the [detaining] officer of the capacity to entertain reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal[.]" *Leming v. State*, 493 S.W.3d 552, 564 (Tex. Crim. App. 2016) (quoting *Woods v. State*, 956 S.W.2d 33, 37 (Tex. Crim. App. 1997) (quoting *In re Tony C.*, 582 P.2d 957, 960 (Cal. 1978)).

"A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest." *Derichsweiler*, 348 S.W.3d at 916. "For this reason, a warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause." *Id.*

In this case, Frydberg initiated a traffic stop because Diaz was driving twenty miles per hour over the speed limit. "[T]he general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). "On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information." *Id.* (citing *United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) (en banc)). "It is only after this computer check is completed, and the officer knows that this driver has a

currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved." *Id.* at 63–64. "If, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd). "If during the course of a valid investigative detention, the officer develops a reasonable suspicion that the detainee was engaged in, or soon would engage in criminal activity, a continued detention is justified." *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) (en banc)). "After the initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention." *Id.*

Diaz does not contest the legality of the initial traffic stop. Nor does he contest that, during the investigation of the traffic stop, Frydberg noticed that Diaz had glassy, droopy eyes and slurred speech. While those conditions might arise from innocent circumstances or conditions, it would not be unreasonable for the ALJ to conclude that Diaz's glassy, droopy eyes and slurred speech, combined with his driving at an excessive speed at 2:30 a.m., could support a reasonable suspicion that Diaz was driving while intoxicated and that a continued investigatory detention was justified to determine whether he was, in fact, intoxicated. *See Leming*, 493 S.W.3d at 564; *Powell*, 5 S.W.3d at 377. Further, although Frydberg did not note in the sworn report that he smelled alcohol, that fact would not lessen a reasonable suspicion that Diaz was driving while intoxicated. *See York*, 342 S.W.3d at 537 (the fact that an officer did not smell

9

alcohol "did not cause reasonable suspicion to dissipate, in part because appellant could still have been intoxicated by drugs" (citing TEX. PENAL CODE ANN. § 49.01(2)(A)[8])). For these reasons, we find that more than a scintilla of evidence supported the ALJ's finding that reasonable suspicion of intoxication justified extending the traffic stop to conduct a DWI investigation.

**B.      There Was Probable Cause to Arrest Diaz for DWI**

Diaz also contends that substantial evidence did not support the ALJ's finding that probable cause existed to arrest him for DWI. In support of his contention, Diaz argues that the results of the SFSTs should not be considered because there was no testimony regarding the relevancy of the tests, how they were scored, the significance of the scores, and how the scores relate to potential intoxication. He also points to different factors in other cases that found probable cause for a warrantless DWI arrest that were not present in this case.

"'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which [the officer] has reasonably trustworthy information are sufficient to warrant a prudent [individual] in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). "Probable cause for a

---

[8]"'Intoxication' means . . . not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." TEX. PENAL CODE ANN. § 49.01(2)(A).

warrantless arrest requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed." *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (en banc) (citations omitted). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer[,] and it requires a consideration of the totality of the circumstances facing the arresting officer." *Amador*, 275 S.W.3d at 878 (citations omitted). "A finding of probable cause requires 'more than bare suspicion' but 'less than . . . would justify . . . conviction." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Here, the sworn report showed that Diaz had been stopped for speeding at 2:30 in the morning. Because "[s]peeding can indicate impaired mental judgment," it "is a factor to be considered as part of the totality of the circumstances" when determining whether there was probable cause for a warrantless DWI arrest. *Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (citing *Arthur v. State*, 216 S.W.3d 50, 55–56 (Tex. App.—Fort Worth 2007, no pet.); *State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App.— San Antonio 2007, pet. ref'd)). In addition, the sworn report showed that Diaz had glassy, droopy eyes and slurred speech, which can support an inference of intoxication. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Thom v. State*, 437 S.W.3d 556, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Foley v. State*, 327 S.W.3d 907, 912 (Tex. App.— Corpus Christi 2010, pet. ref'd).

11

In addition to this evidence, the sworn report showed that an officer certified to administer SFSTs obtained six out of six clues on the HGN test and two of four clues on the one-leg-stand test. While the results of those tests, alone, may not be sufficient to support a DWI conviction, the ALJ could have reasonably inferred that, because the officer administering the test was certified to administer them, they were done properly, and the results were a reliable indication of intoxication. *See Emerson v. State*, 880 S.W.2d 759, 766 (Tex. Crim. App. 1994) (recognizing that to be certified to administer the HGN and other SFSTs in Texas, an officer must complete an NHTSA-approved, state-sponsored training course). Further, in *Emerson*, the Texas Court of Criminal Appeals recognized that the technique employed in the HGN test was a reliable indicator of intoxication and took "judicial notice of the reliability of both the theory underlying the HGN test and its technique." *Id.* at 768–69. In recognizing the HGN test as sufficiently reliable as evidence of intoxication under the rules of evidence, the court noted that "[t]he United States Department of Transportation estimates that a properly-trained police officer should be able to classify correctly, with respect to legal intoxication, 77% of his test subjects if the officer classifies subjects who score four or more points on the test as legally intoxicated." *Id.* at 767 (citing U.S. DEP'T TRANSP., NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., IMPROVED SOBRIETY TESTING 1, 4 (1984), https://rosap.ntl.bts.gov/view/dot/1394). It also observed that the National Highway Traffic Safety Administration "has . . . concluded that the HGN test is the single most effective field sobriety test in determining whether an individual is alcohol-impaired." *Id.* at 766 (citing U.S. DEP'T TRANSP., NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., IMPROVED SOBRIETY TESTING 1, 1 (1984), https://rosap.ntl.bts.gov/view/dot/1394).

Based on the totality of the circumstances, we find that the facts and circumstances within Frydberg's personal knowledge, combined with the results of the SFSTs obtained by the officer certified to administer those tests, gave Frydberg probable cause to believe that Diaz had committed the offense of DWI. For that reason, we find that substantial evidence supported the ALJ's finding that probable cause supported the warrantless arrest of Diaz. As a result, we conclude that the decision by the ALJ to continue the suspension of Diaz's license was supported by more than a scintilla of evidence and that there was some reasonable basis in the record for the action taken by the ALJ. *See Butler*, 110 S.W.3d at 675. We sustain the Department's second issue.[9]

## IV. Conclusion

For the reasons stated, we reverse the trial court's judgment and render judgment reinstating the ALJ's order.

Scott E. Stevens
Justice

Date Submitted:     March 18, 2022
Date Decided:       May 16, 2022

---

[9]Because this issue is dispositive of this appeal, we need not consider the Department's other issue.

13